BERGMAN *v.* STATE.

(Division B.   April 6, 1931.)

[133 So. 208.   No. 29355.]

**W. W. Simmons,** of Cleveland, for appellant.

**Walter A. Scott, Jr.,** Assistant Attorney-General, for the state.

**Ethridge, P. J.**, delivered the opinion of the court.

The appellant, Alice Bergman, was indicted for the murder of one Burnett Caraway, in a joint indictment also charging Charlie Bergman, Tom Travillion, and Frank Bergman with said crime. The actual killing was done by Tom Travillion.

The appellant, Alice Bergman, was tried, convicted, and sentenced to life imprisonment in the state penitentiary from which she appeals.

The main contention of appellant is that the killing, at most, could amount to only manslaughter, and that she should have had a peremptory instruction.

It is not necessary to set out the facts in detail, but it appears that Burnett Caraway was the manager of Pecan Grove Plantation in Bolivar county, and that the defendants named in the indictment lived upon said plantation as tenants and employees thereon. That there was being built upon said plantation a brick veneer building and that a trowel was missed. Mr. Burnett Caraway, the deceased, went to the home of Alice Bergman, the wife of Jim Bergman, to get the trowel and it was given to him. While there he heard a disturbance or fuss going on in the house, and was told by appellant that the boys were disputing about cutting some wood. According to the appellant's witnesses, who were the only ones then present, Mr. Caraway remarked, ''I bet I am going to kill some of them sons of bitches yet;'' that he went back to his house and procured a shotgun and then returned to the house of Alice Bergman. That on seeing Mr. Caraway approach the house, Aug Bergman, one of the sons of appellant, ran out the back door and through the field, and was pursued by Mr. Caraway, After pursuing Aug Bergman some distance, Mr. Caraway fired a shot and wounded him. He thereupon took him, the said Aug Bergman, the son of appellant, and

marched him back to house of Alice Bergman; but before he reached the house, Tom Travillion and one of the other defendants came out into the road armed with pistols, but marched along the road in company with Mr. Caraway and Aug Bergman until they reached the house. When they got to the house, Alice Bergman was "hollering" and wringing her hands, and asking Mr. Caraway not to kill her child, and calling upon the others not to let Mr. Caraway take her child away.

According to the state's witnesses, the appellant was calling out, "Shoot Mr. Caraway."

The proof shows that when they reached the house Mr. Caraway made Aug proceed down the road, and that Travillion and one of Aug Bergman's brother called upon him to stop; that Mr. Caraway told him to go on and he went on, and Travillion cursed and told Aug to stop and that he meant it.

A brother-in-law of Mr. Caraway, who was also present, but who was not introduced as a witness, was told by Mr. Caraway to pick up a stick and knock hell out of the appellant, and the brother-in-law proceeded to pick up a scantling, when one of the sons of the appellant, who was present with a pistol, told him not to hit his mother.

It is shown that, thereupon Mr. Caraway turned in the direction of this son of the appellant, who ran behind the house, and thereupon Travillion stated that the matter had gone far enough, and Mr. Caraway turned in his direction, whereupon Travillion fired a shot and killed Mr. Caraway.

The proof is conflicting as to the position of Mr. Caraway's gun and its condition, the state's proof showing that Caraway had the gun on his left arm unbreeched with the barrel pointing toward the ground and his bridle upon his right arm. There is some proof for the defendant that the gun was breeched and was in the hands of

Caraway, and that he turned, with the gun in his hands, toward the son of the appellant, who ran behind the house, and when Travillion spoke, Caraway turned with the gun toward Travillion who fired the shot.

The defendant also proved that Jim Bergman, the husband of appellant, reached the scene just prior to the shooting and took the appellant away. He told her to go back to the house, and her son, who was in the custody of the deceased, also told her to go back to the house.

There is some proof to the effect that, at the time Caraway turned toward the son of the appellant who told him not to hit his mother with the gun, she was grabbing at the gun, and that she was saying to shoot Caraway; other proof being that she had been taken to the house and was standing in the house or in the yard at the time, the witnesses differing as to her position.

There was also proof that Caraway stated he was carrying Aug Bergman to jail, but there is no proof showing that he stated for what offense he was carrying him there. It is not made entirely clear, but by way of presumption it appears that he had arrested Aug about taking the trowel. It is not in evidence that he was arresting him for any particular offense, and nothing to show that he had stated to any party, or to Aug Bergman, what he had arrested him for. Caraway was not an officer, and had no warrant for the arrest of Aug Bergman. It therefore appears clearly that Caraway had pursued Aug Bergman and had shot him in attempting to arrest him for some misdemeanor without any warrant for such arrest, and that he was taking Aug Bergman to jail over the protest of his mother and family at the time of the fatal shooting.

The appellant did not do the shooting, and the language set out above constitutes the evidence as to her relation to the commission of the crime, if it was crime, there being evidence that Travillion shot at the time Caraway was turning on him with his gun, thus creating

a theory of self defense on his part. Of course, if Travillion was shooting in self-defense, there would be no guilt on the part of the appellant.

It is contended that the evidence is insufficient to convict the appellant of any offense, but we think, taking the state's evidence as being true, that there was sufficient evidence of unlawful killing which, with appellant's conduct and statements, would make her a participant under our statute.

We think, however, that the court below should have limited the jury to convict of manslaughter, and should have eliminated murder from their deliberations, leaving them the theories that appellant was either guilty of manslaughter, or was innnocent.

Under these facts, this case brings into play the cases of William v. State, 120 Miss. 604, 82 So. 318; Williams v. State, 122 Miss. 151, 84 So. 8; Williams v. State, 127 Miss. 851, 90 So. 705; Fletcher v. State, 129 Miss. 207, 91 So. 338.

So far as the proof in this record shows, this case falls under the provision contained in section 1016, Hemingway's Code 1927, section 995, Code 1930, reading as follows:

"Every person who shall unnecessarily kill another, either while resisting an attempt by such other person to commit any felony, or to do any unlawful act, or after such attempt shall have failed, shall be guilty of manslaughter."

We do not know, of course, why the brother-in-law of the deceased was not introduced as a witness, nor whether, if introduced as a witness, his testimony would make a different case; but, on the facts contained in the record in this case, we are of opinion that no greater conviction than manslaughter can be upheld.

The judgment will be reversed, and the cause remanded for a new trial.

Reversed and remanded.