WALKER *v.* STATE.

(En Banc. June 12, 1939.)

[189 So. 804. No. 33717.]

**W. L. Sims** and **John H. Holloman,** both of Columbus;
for appellant.

**W. D. Conn, Jr.,** Assistant Attorney-General, for the State.

**Anderson, J.,** delivered the opinion of the court.

The appellant was indicted and convicted in the circuit court of Lowndes county for the murder of S. A. Honeycutt. The jury in its verdict did not fix the punishment at life imprisonment, therefore the court sentenced the appellant to be hanged. From that judgment this appeal is prosecuted.

The court refused an instruction requested by appellant, that under the evidence the jury could not find a verdict for a greater offense than manslaughter. We are of opinion that the refusal of that instruction was error. We reach that conclusion upon the following considerations:

The question turns largely, if not wholly, on whether or not, when the homicide took place, the appellant was under arrest by Honeycutt without authority of law. Honeycutt had a watermelon patch on the outskirts of the city of Columbus, near a garment factory. Shortly before five o'clock on the morning of July 22, 1938, the appellant went into this patch and stole a watermelon. He had proceeded some distance from the patch with the watermelon, and stepped behind a tree, when Honeycutt came up and discovered him. Honeycutt asked the appellant where he got the watermelon. The appellant replied that he got it out of a watermelon patch not far away. Honeycutt forced the appellant to show him the place where he got it. When that was done Honeycutt recognized that the watermelon had been taken from his patch. All that Honeycutt knew about the larceny was what the appellant told him, and the presence of the watermelon.

Honeycutt was armed with a pistol, which he had in his hand. He forced appellant to go to the garment factory with him for the purpose of calling a deputy sheriff to come and take charge of the appellant. He found a man named Godfrey at the garment factory—the night watchman there who was about to go off duty. He also found a man named Vaughn, the day watchman, who was coming on duty to relieve Godfrey. Honeycutt requested Godfrey to call a constable, Smith, to come and take charge of the appellant. Godfrey was about to make his last round in the factory, and requested Vaughn to call Smith, which he did.

While this was going on Honeycutt and the appellant were nearby, in the factory building, but out of sight and hearing of Godfrey and Vaughn, or anyone else. Honeycutt was guarding the appellant at the point of a pistol, awaiting the appearance of the constable to take him into custody. The appellant begged Honeycutt to permit him to pay for the watermelon and leave. Honeycutt refused to do so. They were strangers—they had never met before.

Down to this point there is no conflict in the evidence. The testimony of the witness, Godfrey, that Honeycutt said to him in the presence of the appellant, "Yes, sir, this boy was stealing watermelons!," does not prove, or tend to prove that the crime was committed in his presence. It meant nothing more than that Honeycutt had found appellant in possession of a watermelon which he confessed he had stolen.

The appellant testified that while awaiting the appearance of the constable he made up his mind that he was going to break away from Honeycutt and escape; that accordingly he attempted to do so, whereupon Honeycutt shot at him, and he, having a pistol himself, drew it and shot at Honeycutt three or four times as he fled, and made his escape.

Vaughn testified that he heard one shot; then, after a short period, three or four shots in rapid succession.

When Vaughn and Godfrey reached Honeycutt he was down from the wound, and died in a very short time without making any statement. The appellant had disappeared from the scene. Whatever conflict there was in the evidence as to who shot first came about as the result of a confession afterwards made by the appellant. The witnesses to the confession testified that the appellant stated that he made up his mind to kill Honeycutt and escape; and to carry out that purpose shot first.

Honeycutt's right to make the arrest depends on whether or not the larceny was committed in his presence. Section 1227, Code of 1930, provides among other things that it shall be lawful for a private person to "arrest any person without warrant, for an indictable offense committed, or a breach of the peace threatened or attempted in his presence." In order to justify an arrest for a misdemeanor, by a private person or an officer, without a warrant, the entire body of the crime must have taken place in the presence, or the hearing and presence, of such private person or officer. A necessary element of the crime cannot be supplied either by the confession of the accused or by information from an outside source. Myers v. State, 158 Miss. 554, 130 So. 741; Kennington Saenger v. Wicks, 168 Miss. 566, 151 So. 549; Butler v. State, 135 Miss. 885, 101 So. 193; Stanley v. State, 82 Miss. 498, 34 So. 360; Carroll v. United States, 267 U. S. 132, 45 S. Ct. 280, 286, 69 L. Ed. 543, 39 A. L. R. 790; 6 C. J. S., Arrest, Sec. 5, pages 580, 581, 582. In the Stanley case the court held that under Section 1255, Code 1892, making it a crime to mingle poison with any food or drink or medicine with intent to kill or injure any human being, the corpus delicti is the mingling of the poison with the food, drink or medicine, and the same cannot be proved alone by the confession of the accused.

In the Carroll case the Supreme Court of the United States used this language:

" 'In cases of misdemeanor, a peace officer, like a private person has at common law no power of arresting

without a warrant except when a breach of the peace has been committed in his presence or there is reasonable ground for supposing that a breach of peace is about to be committed or renewed in his presence.' Halsbury's Laws of England, Vol. 9, part III, p. 612.

"The reason for arrest for misdemeanors without warrant at common law was promptly to suppress breaches of the peace (1 Stephens, History of Criminal Law, 193), while the reason for arrest without warrant on a reliable report of a felony was because the public safety and the due apprehension of criminals charged with heinous offenses required that such arrests should be made at once without warrant. Rohan v. Sawin, 5 Cush. (Mass.) 281."

All that Honeycutt observed was a watermelon in the possession of appellant. He had no knowledge whatever that it had been stolen from him except through the confession of appellant. Devine v. State, 132 Miss. 492, 96 So. 696; Watson v. State, 36 Miss. 593; Johnson v. State, 47 Miss. 671, relied on by the attorney-general, are not in point. It is true, they hold that larceny is a continuous offense, and is being committed at all times during which the thief deprives the owner of the stolen property of its possession. These cases do not hold, however, that the completed crime is committed in the presence of every person who observes the stolen property in possession of the thief, and has information from some source that it has been stolen.

The arrest was unlawful. Section 995, Code of 1930, provides as follows: "Every person who shall unnecessarily kill another, either while resisting an attempt by such other person to commit any felony, or to do any unlawful act, or after such attempt shall have failed, shall be guilty of manslaughter." Where the arrest is unlawful the person arrested has the right, under the law, to use the necessary force to free himself. He can kill, if reasonably necessary, and in doing so is guilty of no crime. On the other hand, if he kills unnecessarily, but without malice aforethought, he is guilty of man-

slaughter. If he kills unnecessarily, with malice afore-thought, he is guilty of murder. Bergman v. State, 160 Miss. 65, 133 So. 208; Williams v. State, 120 Miss. 604, 82 So. 318; Williams v. State, 122 Miss. 151, 84 So. 8; Williams v. State, 127 Miss. 851, 90 So. 705; Fletcher v. State, 129 Miss. 207, 91 So. 338.

Under the evidence in this case there is no element of murder. There is entire absence of malice aforethought —no premeditation. The appellant and Honeycutt were strangers to each other. Taking the appellant's testimony as a witness in his own behalf to be true, he shot in self-defense; and of course if he did he is guilty of no crime. Taking his confession to be true, it means that he made up his mind to kill Honeycutt in order to escape, and shot first. If he shot unnecessarily, he was guilty of manslaughter. On the other hand, if the shooting was reasonably necessary to effect his escape, he is guilty of no crime.

We conclude, therefore, that the issue of manslaughter alone ought to have been submitted to the jury. We do not notice the other assignments of error, because they are of such character as will not occur on another trial.

Reversed and remanded.

**McGehee, J.**, delivered a concurring opinion.

I concur in the view that the appellant was entitled to the instruction that in no event could the jury convict him of a greater offense than the crime of manslaughter, but I prefer to base my conclusion on the ground that the actual facts in the case did not warrant a conviction of murder, without regard to whether the arrest was legal or illegal.

The proof on behalf of the State disclosed that while the witness, Vaughn, was phoning for an officer to come, and the defendant was being forcibly detained outside of the garment factory office by the deceased, he heard one shot fired and then later four more shots; that upon

leaving the phone and going to investigate, he saw the deceased falling; and that when he first saw the deceased after the shooting, the defendant was then nearly 200 yards away, running. On behalf of the defense, the proof disclosed that the deceased was standing guard over the defendant while the witness, Vaughn, went to phone the officers; that the defendant then commenced backing off to make his escape; that the deceased then shot first at him and that the defendant then commenced shooting in return as he fled.

There were no eye-witnesses to the actual shooting. The defendant's story that the deceased shot at him first as he tried to escape is not only reasonable, but is corroborated by the state witness, Vaughn, as to the manner in which the shots were fired and by the fact that the deceased was falling when the witness first saw the defendant some distance away, running. Moreover, the deceased was holding a pistol in his hand for the purpose of preventing an escape when the witness left him and the defendant alone on the outside of the office to go in and use the phone.

An alleged confession as to how the shooting occurred was taken down in shorthand by a local stenographer at the request of the district attorney, in the presence of several persons; and the questions and answers contained in the transcribed and signed statement were placed before the jury by the State in the examination of a Mr. Caldwell, one of the witnesses who was present when the statement was taken. He was asked on cross-examination the following question, "And that covered his statement?," and, he answered, "Yes, sir, entirely."

The signed statement discloses, and the witnesses so testified, that the defendant did not undertake to give his own version of how the shooting occurred but mainly was told what did and did not occur, and merely answered "Yes, sir" and "No, sir." When the stenographer had completed the transcript of her notes, the statement disclosed that the defendant had been asked the question:

"At the time that you shot him, you state that he was the first to fire at you?" He answered, "Yes, sir." The statement contained no other question or answer in conflict with that question and answer. However, before it was signed by the defendant, one of the witnesses present says that he discovered an error in it, and the statement was corrected so as to have the defendant saying that he shot first at the deceased. The stenographer, as a witness on the trial did not admit that there was an error committed in transcribing her notes in that particular, and neither did her shorthand notes show that the defendant had said that he shot first at the deceased. Of the several witnesses present, none of the others testified that the stenographer had made such an error.

The State also offered testimony to show that on this same occasion the defendant stated that he had made up his mind to shoot and kill the deceased and get away. But, neither the transcribed statement nor the stenographer's notes disclosed that he made this statement. Only two of the several witnesses present so testified, and one of them was fair enough to admit that he was in error, as shown by the following question and answer: "Now, you testified in your direct examination a few minutes ago, Mr. Caldwell, that this man said he had made up his mind to kill him, and he backed off and killed him, does he state that in that confession?" Answer: "No, sir, he didn't state that. I got mixed up in what I heard from other reports."

It is true, as held in the case of Tyler v. State, 159 Miss. 223, 131 So. 417, that the State was not limited to the written confession. It was competent for the State to prove any additional statements not covered by the writing, as well as the same confession made orally at different times, if such were made, but I do not understand that this rule would permit the State to take down and transcribe the questions and answers where the accused has agreed to make a statement, and which purports to cover his entire statement, and to then offer

testimony to prove from the memory of witnesses that he made a different statement to that shown by the stenographer's notes and as then reduced to writing and signed. At least, such proof is, in my opinion, too unsubstantial to sustain this verdict.

I am of the opinion that the confession as sought to be established against the accused was contrary to the great weight of the evidence and formed no proper basis for a conviction of murder and the infliction of the death penalty in this case, whether the written part of the confession was formally introduced or not, since the existence of the alleged error in the transcript was not testified to by the several other witnesses present, nor by the stenographer, and was denied by the accused. Then too, the statement as to who fired the first shot, as taken down in shorthand and originally transcribed, was consistent with the physical facts as they transpired at the scene of the shooting, as testified to on the trial by the witnesses for the State, Godfrey and Vaughn, and also by the accused.

For the reasons hereinbefore stated, I do not think that there was any such substantial proof that the killing was done with malice aforethought as would justify upholding a verdict of murder, even if the arrest had been legal. Upon this ground alone, I am content to rest my concurrence in the conclusion reached, and agree that the issue should have been limited to manslaughter.

**McGowen, J.**, delivered a dissenting opinion.

I cannot bring myself to agree with the conclusions reached by the majority of this court herein, for the reason that I think this record shows beyond dispute that the accused was lawfully under arrest at the time he shot to death Honeycutt, a private citizen, who had arrested him for the crime of petit larceny committed, as I think, in his presence.

The statement made by the defendant, who was the

only eye-witness, except his victim, at the time of and before the homicide, including the time of arrest, demonstrates that he was lawfully arrested. While the accused was on the witness stand, he was asked these questions by his counsel:

"Q. Tell about what you did from the time you crossed the railroad there at the garment plant until you saw a man down there? A. After I crossed the railroad at the garment plant I started on down the road. I went out in the watermelon patch, got a melon, went on down the road and hid behind a tree, as I got around side of it he walked out from behind the tree, asked where did I get that melon from. I told him I got it up there in the patch. He asked me to come go with him show him where I got that melon from. I goes on back up the road with him, showed him where I got it. He told me, 'Come on, I am going to have you arrested.'

"Q. Did you have the watermelon then? A. Yes, sir.

"Q. Did you know this man? A. No, sir.

"Q. What, if anything, did he have? A. He had a gun in his hand."

After pointing out the place where he got the watermelon, according to the statement of the accused, they went a short distance across the said road to a garment plant, where Honeycutt, with his pistol in his hand, requested Godfrey, a night watchman at the plant, to telephone for an officer to come out and get Oscar Walker. Godfrey testified as follows: "Q. Did he (meaning Honeycutt) tell you what Oscar had been doing? A. He told me he had stole a watermelon out of his patch."

When this statement is considered in connection with the fact that the accused testified that while he was in the watermelon patch stealing the melon he saw Honeycutt out there—I think this is a voice from the grave, speaking in thunder tones that the crime was committed in his presence, even if the first caption constituted a complete crime necessary to be known then and there by the deceased in his presence, that is, severing the

watermelon from the vine and removing it from the ground constituted a declaration of the deceased that he saw with his eyes the crime so limited committed. It was a statement of a fact relevant to the issue here under review. At the time the accused came in contact with Honeycutt at the tree, there was no arrest, no force employed. Honeycutt had a pistol, but the record does not disclose how he was carrying it. The appellant had a pistol which was evidently concealed. It is just about as reasonable to say that the accused forced Honeycutt to go with him to the watermelon patch as the other deduction, which is found in the statement of this court. Oscar Walker's statement is that Honeycutt asked him to go with him and show him where he got the melon. That is every line in the record indicating any force. After they went to the watermelon patch, Honeycutt gave the peremptory order to the accused to "come on, I am going to have you arrested;" and on the way to the factory, the accused offered to pay for the watermelon.

I am of the opinion that the caption was continuing when the deceased came upon the accused trying to hide behind a tree with a watermelon in his arms, that the asportation was a continuing one; and no question could be raised but at that moment when they first came in contact with each other that the crime of petit larceny was being committed in the presence of Honeycutt. The theft was admitted then and there, but proved beyond contradiction by the fact that the accused carried the deceased to the patch and showed him the place. I am of the opinion that the original caption in this case was still unbroken when the two parties to this tragedy came in contact with each other, and that the original asportation was yet in progress. If I am correct in this view, then even at the common law Honeycutt was fully justified in making the arrest. Authorities could be cited from other jurisdictions in support of this view, but I am content with resting upon the decisions of this Court, especially Devine v. State, 132 Miss. 492, 96 So. 696;

Johnson v. State, 47 Miss. 671; and Watson v. State, 36 Miss. 593. In the Devine case, this court so held in this language:

"The contention of the appellant is that the larceny was complete when Carter and his companion removed the car from the place where it was parked, and that if he thereafter rendered them any assistance in making away with the car he did not thereby become guilty of larceny but became only an accessory after the fact. This contention is without merit for the reason that larceny is a continuous offense and is being committed every moment of the time during which the thief deprives the owner of the stolen property of its possession.

" 'The legal possession' of the goods stolen continues in the 'true owner; and every moment's continuance of the trespass and felony amounts' in legal consideration to a 'new caption and asportation.' Watson v. State, 36 Miss. 593; Johnson v. State, 47 Miss. 671; 2 Brill's Cyclopedia Crim. Law, Sec. 758.''

The authorities cited in this opinion fully support the text, and it must of necessity be so held. Otherwise, in the case of a larceny which has been committed by A in X county, and the personal property transported to Z county, an indictment could not allege that the crime of larceny had been committed in Z county unless the crime was continuing.

Further, this court held in Williamson v. State, 140 Miss. 841, 105 So. 479, that when the officers were searching for liquor being transported in an automobile and came upon an automobile with kegs and a bottle of whisky on the seat thereof, the accused was asked before arrest or search what was in the kegs, and voluntarily replied that it was whisky. A sheriff is authorized to arrest without a warrant, and may seize intoxicating liquor without a warrant.

We may add that the garment factory, the watermelon patch, and the tree where the accused and deceased first met each other, was shown by the evidence of the appel-

lant in this case to have been within eyesight. From the witness stand, he pointed out an object which he then saw as being the distance from the tree to the watermelon patch. The case is then one of confessed theft. The defendant was undoubtedly guilty of petit larceny in the light of the facts here set forth in detail, and he undoubtedly made known that fact to the private citizen who arrested him, and whose act is now said to be unlawful.

The cases cited from our court as supporting the view of the majority are so clearly distinguished as not to call for extensive analysis.

Believing that the evidence in the confession detailed by several witnesses was worthy of belief, I am of the opinion that these extra judicial confessions showed a deliberate cold-blooded killing, and that the jury were warranted in disregarding the testimony of the accused on his plea of self-defense in this case.

As to the facts of the details of the homicide, the State must rely on the confession of the accused, while the appellant, the only living eye-witness of the homicide, made an issue, denied the admission in his confession that he shot first at Honeycutt, and that he had formed the intent to kill Honeycutt before the shooting started.

After denying that part of his confession, he then swore to a case of self-defense; that is, he fired upon Honeycutt after the latter was shooting at him, as he was in the act of escaping by running from Honeycutt.

The jury adopted the view of the State, that he had confessed to the incriminatory facts, as detailed by the State witnesses.

The only way we can reject the confession is to say that the district attorney knowingly proffered perjured evidence to obtain a conviction, because he was present and the confession was made to him. I repudiate the suggestion.

This case should be affirmed.

**Smith, C. J.,** concurs in this dissenting opinion.