## CLARK *v.* STATE.

(In Banc.  March 12, 1945.)

[21 So. (2d) 296.  No. 35705.]

Jackson, Young & Phillips, Ernest L. Shelton, and Will S. Wells, all of Jackson, for appellant.

**Greek L. Rice,** Attorney General, by **Geo. H. Ethridge,** Assistant Attorney General, for appellee.

Argued orally by **Forrest B. Jackson**, for appellant, and by **Geo. H. Ethridge**, for appellee.

**Griffith, J.,** delivered the opinion of the court.

The proof shows that within the territorial jurisdiction of the trial court three policy houses had been in operation, and that appellant as the houseman was in charge of the operations of one of them called the Liberty. The general plan included the service of writers who would issue tickets upon which the ticket purchaser, called the player, would select a number or numbers from 1 to 78, and a triplicate of the ticket would be delivered to him and another would be retained by the writer, while the third with the purchase money would be deposited in a bag with others, and later the bag and its contents would be delivered to the pick-up man, who in turn would deliver them to the house. Twice a day 78 balls numbered from 1 to 78 would be put in a suitable bag by the houseman and shaken, and then there would be drawn from the bag 12 of the balls and the numbers on the twelve would designate the winners. The prizes in money would then be given to the pick-up man, who in turn would carry it to the respective winners. It is not contended, as it could not be, that this is not a lottery, and in one of its lowest forms at that.

There are ten sections in the Code, Title 11, Chapter on Crimes and Misdemeanors, which deal with the subject of lotteries. Under the first section, Section 1038, Code 1930, Section 2270, Code 1942, the offense is made a felony, and under each of the other nine sections, a misdemeanor.

Section 1038, section 2270, reads as follows: "If any person, in order to raise money for himself or another, or for any purpose whatever, shall publicly or privately put up a lottery to be drawn or adventured for, he shall, on conviction, be imprisoned in the penitentiary not exceeding five years."

No case in this state or elsewhere has been found which has passed upon the question as to what is meant by the expression "put up a lottery." We must depend, therefore, entirely on the ordinary and familiar rules of construction which are that we must conclude, unless the contrary sufficiently appears, that the words of a statute

have been employed in their usual and most common sense and as they would ordinarily be understood by the public in general. State v. Lee, 196 Miss. 311, 17 So. (2d) 277, 151 A. L. R. 1143. What, then, would be understood when we say that John Doe has put up a business, or more specifically that John Doe has put up a mercantile business? We would understand that he has procured a place for it and therein has installed shelves and counters, together with the other necessary equipment, and has stocked it with the merchandise therein to be sold, and has authorized it to be opened for trade. If thereupon he has employed Richard Roe to operate or conduct the business, Roe would not thereby have put up a business but would be operating a business already put up by another.

Or, if we say that John Doe has put up a mill or a gin, Richard Roe by subsequently operating it could not for that reason alone be said to have put it up. Suppose it were a felony in this State to put up a saloon, would a person employed therein to sell the liquors be guilty of the felony of having put up the saloon, instead of the misdemeanors of making sales?

There is a close analogy between the expression here under consideration and the term used in gambling statutes which make it a criminal offense to set up a gaming table. And on this subject, also, few cases are found; but there is one such case, well considered, in Commonwealth v. Burns, 4 J. J. Marsh., Ky., 177, wherein the distinction between setting up a gaming table and the keeping of such a table is pointed out. There it was held that ''to set up a gaming table, is to provide whatever may be necessary for the game, and either by acts or words, to propose to play it,'' and that a person who subsequently kept the game, that is to say, who operated it, would not for that fact alone be the person who set it up.

It has been contended, however, that every new drawing, or every occasion on which a drawing is made, amounts to another and a new putting up of a lottery.

Upon the same argument and with equal reason it could be contended that every morning when an established mercantile store is opened for business there would be another and a new putting up of the business. And besides this, Section 1047, Code 1930, Section 2279, Code 1942, deals with cases wherein the putting up is for a single occasion, and that is a misdemeanor.

We conclude, therefore, that to put up a lottery is not to operate it, but is to put up or provide whatever is necessary for its operation, that is to say, to put up or provide (1) the capital, (2) the necessary paraphernalia, and (3) the plan or set-up for the operation.

The indictment against appellant charged that he "did then and there wilfully, unlawfully and feloniously, in order to raise money for himself, publicly put up, own, maintain and operate a lottery to be drawn or adventured for, commonly called policy, a gambling game for money, further description of which is to the grand jurors unknown, and operated same by selling lottery tickets therein . . . and paid out money by chance drawings therein to divers persons to the grand jurors unknown."

It will be observed that the charge is not confined to that of having put up a lottery, which is a felony, but charged further offenses which under subsequent sections of the statutes are misdemeanors. No motion was made to have the state elect upon what particular charge it would proceed but the trial went forward under the indictment as presented. There was no proof that appellant had put up the lottery as that term has been above defined. For all that the proof shows, the lottery may have been in operation somewhere within the same vicinity for sometime before appellant ever had any connection with it whatever. And we think that the suggestion that proof that appellant was operating the lottery casts upon him the burden to show that he did not put it up would be to introduce a novel proposal in criminal law, wherein the burden to prove the charge is always on the state. The defendant here is not availing of an exception or

excuse or justification but stands upon the want of proof that he was guilty of the felony.

·The proof does show, however, that he did receive money for the lottery and that he did deliver prizes for it, and this is undisputed. This would bring him within Section 1046, Code 1930, Section 2278, Code 1942, and since there was a general verdict of guilty as charged, we sustain the verdict but reverse the judgment as to the penitentiary sentence, and remand so that a fine and jail sentence may be imposed under the section last cited. See Goins v. State, 155 Miss. 662, 124 So. 785, and Grillis v. State, 196, Miss. 576, 17 So. (2d) 525.

Affirmed in part, and reversed and remanded for proper sentence.

## DISSENTING OPINION.

**Alexander, J.**, delivered a dissenting opinion.

The record reveals that appellant·was doing what the indictment charged, and what the statute prohibited. It was entirely consistent with a finding of guilt, and the jury so found. Appellant is being excused because the state did not negative what it was under no duty to disprove. Despite proof sufficient to make a prima facie case of guilt, he is exonerated by our having imported into the record for his benefit those speculative possibilities which we have so often condemned as insufficient and irrelevant grounds for conviction.

Let it be supposed that appellant is, in fact, the original genius of the enterprise. He could well be, and for all that is shown to the contrary he is entitled to complete credit for its activation. Nevertheless, he would be acquitted of his responsibility, contrary to the demands of justice, because of the possibility that the accusing appearances might be contrary to a fact which the defendant alone knew. The jury have a right to convict on circumstantial evidence, even as the defendant has the

duty to rebut a prima facie case. Here the complete control of the paraphernalia and of the agents employed is sufficient to show that he inaugurated the project. His possession of the several devices and of the funds for distribution is presumptive evidence of his ownership.

If the writer of the opinion had the power and propensity to set up such a scheme and to conduct it as did appellant, he would be unquestionably guilty. Yet it could be undertaken with the judicial assurance that, despite his complete independence in conception and execution, there would be indulged in his favor a presumption that he was acting at the suggestion and instigation of a superior. And so this rampant view once loosed to serve such operator would run to the aid of his superior and defend him with the same assumption of a subordinate role. This interesting scene would be re-enacted successively as the ingenuity and industry of detection proceeded anew to the man yet higher up. Only the man highest up whose pride of invention forbade the concession of a superior mind, would be guilty.

It does not matter why the appellant put in operation the lottery, nor whether the idea was original with him or that he is beholden to some superior inventive genius. If he performed all the acts which an independent and original scheme required, he is at least prima facie guilty as a principal or an accessory.

The majority opinion states that he was in charge of the lottery. Each day he set in operation with instrumentalities in his possession and through agents under his control, a complete lottery. He paid off the winners with funds which he possessed and which presumptively were his own. It is true the appellant could be convicted for the constituent offenses, even as one charged with murder could be convicted of assault and battery, or pointing or carrying a pistol. On the other hand, his pickup men, had they distributed the tickets, drawn the lottery, and paid the winners should be convicted for putting up the

lottery. It is not here relevant that, by their proof of an agency, they could be found guilty of a lesser charge.

The circumstances shown, being consistent with guilt, placed a procedural burden on the accused. He is being excused by a reasoning which would acquit a murderer upon the speculative possibility that a third party, by nudging his elbow, had caused an accidental discharge. Such defense, of course, would be good, if true. But it is to be supplied not by the theory of the court, but the testimony of the defendant.

The opinion of the Court states: "For all that the proof shows the lottery may have been in operation somewhere within the same vicinity for some time before appellant ever had any connection with it whatever." That is, of course, a possibility. Yet, for all the appellant showed, he may have been its inventor. More to the point, as far as the proof does show, he was.

It is not believed, deferentially, that illustrations drawn from the saloon or mercantile business are apt. The scheme here was not a tangible thing like a counter or a table which could be set up. It was an idea. It was to be activated by conduct. It could not be set up as goods or equipment. The Court has borrowed the wisdom of Commonwealth v. Burns, 4 J. J. Marsh., Ky., 177, decided a hundred and fifteen years ago. An ancient statute was there being construed which prohibited the "setting up" of a gaming table. The court, while conceding that to "set up" and to "keep" a gaming table were for all practical purposes synonymous, stated: "It must be construed as a penal statute." It seems to be disregarded that the statute here involved is to be given a liberal construction. Code 1942, sec. 2202. In the Kentucky case it is interesting to notice that the court defined "setting up" a gaming table as meaning "to provide whatever may be necessary for the game, and either by acts or words, to propose to play it." Such is the situation in the instant case. A further test was whether there was a "banker" or one who paid off the winners, as distinct

from one who manually installed the devices or merely managed the playing. But, here, the appellant performed all these functions. In the Burns case there were two persons in charge of the gaming, one who dealt the cards and the other, Burns, who harvested the winnings. That court was confronted with the difficulty of distinguishing between one who manually ''set up'' a gaming table and one who ''kept'' it, and its labored distinction could have been foregone if, as here, there was only one head and the person who set the scheme in operation each day furnished all the equipment and paid winners from his own purse.

The difficulty of interpreting the phrase ''put up a lottery'' is less than that of getting more apt words to describe the establishment of the scheme. Whatever word is selected is aimed at the one about whom the project revolves. He who activates the idea or carries it out for his own benefit puts it up. In a literal sense he puts up the money and the tickets. We should not be at pains to construe him out of jail with mere assumptions, nor give to his accusing silence an exculpatory voice.

Appellant was the hub of a wheel in which his several agents were the spokes. In its rim were the prospective victims of the scheme. It was not a wheel within a wheel. Its completeness in structure and operation lacked nothing. He could, therefore, in fact be guilty. It was for the jury to say. He could possibly have been innocent of that which the facts and the appearances accused him. It was for him to explain.

To the practical difficulties of uprooting a nefarious practice we have added technical obstacles and have compelled the state both to prove guilt and to disprove a defense which the defendant does not assert.

**Smith, C. J.,** concurs in this opinion.