305 So.2d 333 (1974)
Roger Dale WELLS
v.
STATE of Mississippi.
No. 48099.
Supreme Court of Mississippi.
December 23, 1974.
Rehearing Denied January 20, 1975.
*334 Corr & Carlson, Sardis for appellant.
A.F. Summer, Atty. Gen. by Billy L. Gore, Sp. Asst. Atty. Gen., Jackson, for appellee.
RODGERS, Presiding Justice, for the Court:
This is a unique case of rare and singular facts. The grand jury of Tunica County, Mississippi, indicted Roger Dale Wells for the murder of Wayne H. Mayes. He was tried and convicted in the circuit court and sentenced to serve a term of his natural life in the Mississippi State Penitentiary. He has appealed to this Court and contends here that he should have been acquitted of the charge of murder or in the alternative that he is now entitled to a new trial for several alleged errors hereafter mentioned.
The state offered testimony to show that two men  Charlie M. Johnson and Wayne H. Mayes [the deceased]  were traveling from their place of employment at Colliersville, Tennessee, to their homes near West Helena, Arkansas. They stopped for refreshments at the Lady Luck Lounge in Tunica, Mississippi. After drinking beer they entered into separate games. Mayes played pool and Johnson operated a pinball machine. Finally, Mayes told Johnson that he was going to the men's room and that they would then go on home. Later, Mayes staggered into the poolroom holding his neck and told Johnson that somebody had cut his head off. Johnson put Mayes on the floor and tried to stop the loss of blood, but to no avail. Mayes died immediately. A witness testified that he observed the defendant closing a knife, and he heard the defendant say, "I killed him." A deputy sheriff came and was given a large knife. He arrested the defendant. The defendant, Wells, after having signed a warning memorandum, admitted that he cut the deceased, but said that Mayes had been going in and across a dance floor without paying the required entrance fee; that his wife, Mrs. Wells, was taking up the admission fee for the dance; that she had requested the deceased Mayes to pay several times, and that she again requested payment, whereupon Mayes cursed Mrs. Wells. The defendant said that he then asked Mr. Mayes not to curse his wife. He said that Mayes first invited him [Wells] outside; that he refused and that Mayes said, "Come on, I am going to get you." Mayes then caught the defendant by the throat "cutting off his wind." At that point Wells got out his knife and opened it and said that he put it "close to his throat." I meant to scare him is all, when he saw the knife, he jumped, he jerked back, and the knife cut his throat."
A local physician testified that he examined the body of Mayes at the Tunica County Hospital and found a deep cut on the left side of his neck about eight (8) inches long which was of sufficient depth to sever the jugular vein system. He said that the deceased died from the loss of blood.
None of the witnesses for the state saw nor heard any part of the affray between the defendant and the deceased.
When the state had rested its case, the defendant made a motion for a directed verdict. The court overruled the motion, and the defendant introduced testimony to show the following facts. Mrs. Wells, the wife of the defendant, testified that she was acting as the cashier to collect the entrance fee to a dance that was being given in a room adjoining the poolroom, and that Wayne Mayes came into the place where the dance was being held three times and *335 refused to pay to go into the dance. On each occasion he informed Mrs. Wells that he was going to the rest rooms. On the last occasion he told her that he was going to the bathroom, and her husband said, "Mr., are you getting smart with my wife?" and Mr. Mayes said, "What's it to you?" Then he blurted out a curse word. She said Mr. Mayes then invited her husband to go outside, and the next thing she knew, Mr. Mayes "got Roger around the throat choking him." She then said, "Well, I saw him he turned. As he was turning he tripped on the table leg and fell into the knife and run into the pool room."
Mrs. Roebuck, defendant's mother-in-law, testified about the same facts as those testified to by Mrs. Wells.
The defendant took the stand and testified that he did not know Wayne Mayes and had never seen him before. He gave his version of what occurred as follows:
"Well, my wife and my mother-in-law, they were telling me about this man keep walking in and walking out without paying, and I sat there a few minutes, we was counting money, and he walked in and walked over to the jukebox; he walked back out; I didn't say nothing to him; and then my  he come back in a few minutes later and my wife asked was he going to pay, and he says something about he had to go to the bathroom; she told him to go ahead. He just stood there mumbling; and he cussed her, and I told him I didn't appreciate him getting smart and cussing my wife. He said, `let's step outside', and he says, `I'm going to get you.' I said, `Ain't no need of that,' I said, `If I was up there playing in the band  I mean if you was up there playing in the band, you'd want me to pay to come in; that's all we want just for you to pay us.' He said, `All right, we'll just get it over with in here'. And, he reached over and grabbed me around the throat, and he had my wind cut off. I reached in my pocket and pulled my knife out, I was going to scare him, because I was scared to death, done had my wind cut off, and I put the knife up on his shoulder, and he tripped, turned around, jerked or something, and cut his neck."
Defendant admitted that the knife introduced as an exhibit to the testimony of the deputy sheriff was the knife he said that he did not intend to "cut nobody with it."
We have detailed the facts in this case because the real issue is whether or not the facts are sufficient to establish the charge of murder.
At the conclusion of the testimony offered by the State of Mississippi and again when both sides had rested their cases, the defendant requested the court to direct a verdict in favor of the defendant as to the charge of murder. The trial judge overruled both motions upon the ground that "the statement made by the defendant may or may not be reasonable; that will be a question for the jury, not a question for the court."
We are of the opinion that the learned trial judge was in error for the following reasons.
It will be remembered that none of the witnesses introduced by the State of Mississippi saw any part of the altercation between Mr. Mayes and the defendant Wells. The defendant and his witnesses testified that Mr. Mayes invited Mr. Wells to go outside to settle the matter and that he then seized the defendant by the throat. The defendant said he "cut off my wind." Mayes reached across a table to attack the defendant. The defendant claims he got his knife open and put it by the deceased Mayes' neck to scare him. Whether he intended to cut Mayes or to scare him is immaterial at this point, since we have reached the conclusion that in either case, the defendant could not be guilty of murder. The greatest crime for which he could be found guilty is manslaughter.
*336 The testimony of the defense witnesses is neither unreasonable nor improbable. Moreover, there is no testimony in the record to indicate malice or premeditated design by the defendant to take the life of the deceased Mayes.
There are two sections of our Mississippi Code Annotated (1972) which we find to be applicable to the facts in this case  Sections 97-3-29 and 97-3-31. The first section is in the following language:
"The killing of a human being without malice, by the act, procurement, or culpable negligence of another, while such other is engaged in the perpetration of any crime or misdemeanor not amounting to felony, or in the attempt to commit any crime or misdemeanor, where such killing would be murder at common law, shall be manslaughter." Miss. Code Ann. § 97-3-29 (1972).
This section is applicable because there is no malice shown by the evidence. The killing occurred in a sudden fight at a time when the uncontradicted testimony shows that Mayes was attacking the defendant.
Mississippi Code Annotated Section 97-3-31 (1972) is in the following language:
"Every person who shall unnecessarily kill another, either while resisting an attempt by such other person to commit any felony, or to do any unlawful act, or after such attempt shall have failed, shall be guilty of manslaughter." Miss. Code Ann. § 97-3-31 (1972).
This section is applicable here because, if in fact it were unnecessary for the defendant to kill the deceased, the defendant was resisting an attack by the deceased. Furthermore, the defendant acted without malice or premeditated design to take the life of the deceased.
This Court has carefully analyzed and interpreted Section 97-3-31 beginning as early as 1876 in the case of Long v. State, 52 Miss. 23 (1876), in which the Court gave a history of the statute. In that case the defendant shot a man who had previously attacked him with a knife in his hand at a time, however, when the defendant was out of the reach of his assailant. The Court, however, held that an instruction embodying the statute was properly refused because the Court said in this early case: "We do not think that it [the statute] was intended to apply to cases of mutual combat, unconnected with the commission or attempt to commit some other unlawful act by the party slain." 52 Miss. at 41.
This interpretation of the statute here involved gradually changed. In the case of Williams v. State, 120 Miss. 604, 82 So. 318 (1919), this statute was again argued before this Court. In that case a prisoner shot a deputy sheriff who beat him to make him reveal where he had concealed a pistol. This Court originally affirmed the death sentence conviction of murder [by a divided court] upon the ground that it was a jury question as to whether or not the defendant killed the deceased because of malice. Later, however, this case came back before the court on a suggestion of error in Williams v. State, 122 Miss. 151, 84 So. 8 (1920). The Court cited the last above quoted statute [now Mississippi Code Annotated Section 97-3-31 (1972)], and said:
"But when, as here, it is manifest that the intention to kill was formed because of the criminal act of the deceased, in repelling that act the offense, which but for the statute would be murder, is by its plain meaning reduced to manslaughter. Malice is not predicable under the facts of the case before us." 122 Miss. at 177-178, 84 So. at 14.
In Bergman v. State, 160 Miss. 65, 133 So. 208 (1931), a plantation manager was killed by Tom Travillion, at the alleged insistence of Alice Bergman, at a time when the plantation manager was trying to make an illegal arrest. This Court had the last above quoted section again under consideration *337 when it said: "We think, however, that the court below should have limited the jury to [a] convict[ion] of manslaughter, and should have eliminated murder from their deliberations, leaving them the theories that appellant was either guilty of manslaughter, or was innocent." 160 Miss. at 70, 133 So. at 210.
Since Bergman we have had many cases involving the foregoing Mississippi Code Annotated Section 97-3-31 (1972), and this Court has uniformly held that facts shown to be similar to the facts here in evidence do not meet the requirement of facts in evidence to establish murder.
In Bowen v. State, 164 Miss. 225, 144 So. 230 (1932), a man attempted to attack a woman in her home and she shot him. The homicide was not murder.
In Bangren v. State, 196 Miss. 887, 17 So.2d 599 (1944), this Court held that the killing of a mere trespasser in an assignation house was not murder, and that the trial court should have limited the charge to that of manslaughter.
In Cutrer v. State, 207 Miss. 806, 43 So. 385 (1949), the defendant killed the deceased after the deceased had struck defendant's wife in a sudden affray. This Court held that the trial court should have limited the charge to manslaughter.
In Trask v. State, 216 Miss. 557, 62 So.2d 888 (1953), the jury returned a verdict of manslaughter in a murder case arising in a sudden affray, and on appeal we held this verdict was proper.
In Coleman v. State, 218 Miss. 246, 67 So.2d 304 (1953), where the defendant cut an officer when the officer was unlawfully attacking the defendant, this Court again held that the trial court should have limited the charge to manslaughter because of the last quoted statute.
In the case of Jordan v. State, 248 Miss. 703, 160 So.2d 926 (1964), where the defendant killed a trespasser who slapped him, this Court held that the trial judge should have limited the charge to that of manslaughter.
Finally, in the recent case of McElwee v. State, 255 So.2d 669 (Miss. 1971), where the defendant shot and killed a trespasser at his room door, this Court held that the trial judge should have instructed the jury that it could not find the appellant guilty of any crime greater than manslaughter.
It is clear, therefore, that by reason of both Code sections above quoted and particularly because of Mississippi Code Annotated Section 97-3-31 (1972), it was the duty of the trial judge to limit the charge under the facts shown in this case to manslaughter. The defendant could, of course offer such defense as he had to the charge of manslaughter for the determination by the jury.
The appellant has offered several other alleged grounds for reversal, only one of which merits further comment. We do not believe that the appellant was entitled to acquittal upon the ground that his witnesses' testimony should be accepted as the facts in the case under the so-called Weathersby Rule [Weathersby v. State, 165 Miss. 207, 147 So. 481 (1933)]. There are other facts in evidence which in our opinion raise a jury issue as to whether or not the appellant was guilty of manslaughter.
All of the justices agree that the evidence in this case is not sufficient to support a conviction for murder and should be reversed for that reason; however, there is disagreement among the justices on the scope of remand. The majority and dissenting opinions on this aspect of the case follow:

ON SCOPE OF REMAND
SUGG, Justice, for the majority:
In other criminal cases we have reversed and remanded for sentencing for a lesser crime when such lesser crime was a constituent *338 of the offense charged in the indictment. In Anderson v. State, 290 So.2d 628 (Miss. 1974), defendant was convicted of burglary. The burglary conviction was reversed but remanded for resentencing on the charge of trespass without granting defendant a new trial on the lesser charge. We held:
Trespass is necessarily a component of every burglary. Implicit in the verdict finding defendant guilty of burglary is the finding that he was guilty of the constituent offense of trespass, Section 97-17-87, Mississippi Code Annotated (1972). Inasmuch as the jury has found the defendant guilty of the greater crime, and the evidence of defendant's guilt of trespass is conclusive, the judgment is affirmed as a conviction of trespass, and the case is remanded for sentencing on that charge. See Washington v. State, 222 Miss. 782, 77 So.2d 260 (1955). (290 So.2d at 628-629).
In a number of cases where defendants have been convicted of assault and battery with intent to kill and murder, this Court has reversed such convictions but affirmed as a conviction of assault and battery and remanded for resentencing on the lesser charge. See Corley v. State, 264 So.2d 384 (Miss. 1972); Woodall v. State, 234 Miss. 759, 107 So.2d 598 (1958); Washington v. State, 222 Miss. 782, 77 So.2d 260 (1955); Webb v. State, Miss., 30 So.2d 894 (1947); Daniels v. State, 196 Miss. 328, 17 So.2d 793 (1944).
We are unable to find any cases where this Court has reversed a murder conviction but affirmed a conviction of manslaughter; however, this procedure was suggested in a specially concurring opinion in Bangren v. State, 196 Miss. 887, 17 So.2d 599 (1944) where the Court held that the issue of murder should not have been submitted to the jury, but should have been limited to manslaughter. Justice Alexander, in a specially concurring opinion stated:
I concur in the reversal of the case upon the asserted grounds but not upon its remand except for sentence. The jury rejected the plea of self-defense and resolved the issue of justification adversely to appellant. She was therefore found guilty of unjustifiable homicide which is either murder or manslaughter. The verdict is for murder, which, under the facts of the case, includes manslaughter. Hughey v. State, Miss., 106 So. 361. Had the jury found a verdict for manslaughter, we should have allowed it to stand. There seems to be no reason, therefore, why our assent to a conviction for the lesser offense should not stand, and the cause be remanded for sentence only. Oliver v. State, 5 How. 14, 6 Miss. 14; Ex parte Burden, 92 Miss. 14, 45 So. 1, 131 Am.St.Rep. 511; Martin v. City of Laurel, 106 Miss. 357, 63 So. 670; Smithey v. State, 93 Miss. 257, 46 So. 410; Jones v. State, 147 Miss. 85, 113 So. 191. This procedure is uniformly followed in some states. Reynolds v. State, 186 Ark. 223, 53 S.W.2d 224; Brooks v. State, 141 Ark. 57, 216 S.W. 705. Under our statute when there is a valid conviction, an error in fixing the punishment entitles a defendant only to a reversal as to the degree of punishment. 2 Miss.Code 1942, Section 2609. Defendant is in no position to complain since the judgment here is favorable to her. Compare Calicoat v. State, 131 Miss. 169, 95 So. 318. See also Grillis v. State (Miss.), 196 Miss. 576, 17 So.2d 525.
It may be that the course here advocated should not be followed in all reversals of convictions of murder, for the only alternative in some cases may be acquittal. But when as here, there was a deliberate homicide not justified as either, inadvertent or in the heat of passion, and when the jury have found defendant guilty not only of manslaughter but of murder, it should be affirmed as to that degree implicit in the jury's verdict.

*339 A defendant's privilege against former jeopardy should not be enlarged to require the prosecution to be subjected to a similar hazard. To allow appellant a new trial means that she is entitled to have a second jury ratify the present conviction, with the added privilege of seeking an acquittal upon a plea of self-defense which has already been rejected. Upon the record, we have in effect said that she was guilty of manslaughter but must be again convicted before being punished.
I am authorized to state that Justice Griffith concurs in the foregoing views.
McGEHEE, Justice, delivered the concurring opinion.
I concur in the foregoing views but since they have not received the assent of a majority of the Justices, I was unable to incorporate the same as a part of the controlling opinion written by me herein. (196 Miss. at 899, 900, 901, 17 So.2d at 601-602.).
In Bangren the question of scope of remand was decided by an evenly divided court and, as noted by Justice McGehee, he was therefore unable to incorporate the same as a part of the controlling opinion written by him.
We have affirmed convictions of manslaughter under a murder indictment on the theory that manslaughter is a lesser constituent offense of murder. Manslaughter is necessarily a constituent offense of murder because the chief distinction between murder and manslaughter is deliberation and malice in murder and want of deliberation and malice in manslaughter.
In Goldsby v. State, 226 Miss. 1, 78 So.2d 762 (1955) cert. den., 350 U.S. 925, 76 S.Ct. 216, 100 L.Ed. 809 (1955) this Court stated:
"The chief distinction between murder and manslaughter is the presence of deliberation and malice in murder and its absence in manslaughter." Carter v. State, 199 Miss. 871, 25 So.2d 470. In Pairlee (Alias Parllee), Rogers v. State, 222 Miss. 609, 76 So.2d 702, when according to the State's evidence, Rogers had stabbed the deceased to death at a time when she was not in any immediate danger, real or apparent, of losing her life or suffering some great bodily harm at the hands of the deceased, the Court said: "If the killing occurred under those circumstances, it was either murder or manslaughter; if done without malice. Both guilt and the grade of the homicide were for the determination of the jury. Hence it was not error to submit the issue as to murder." See also Denham v. State, 218 Miss. 423, 67 So.2d 445. (226 Miss. at 15, 16; 78 So.2d at 767).
The same statement was made in Guest v. State, 96 Miss. 871, 52 So. 211 (1910). We specifically held in Roberson v. State, 257 So.2d 505 (Miss. 1972) that an indictment for murder includes the charge of manslaughter in the following language:
The indictment for murder includes the charge of manslaughter. King v. State, 251 Miss. 161, 168 So.2d 637 (1964); Calicoat v. State, 131 Miss. 169, 95 So. 318 (1922); Dyson v. State, 26 Miss. 362 (1953); Kelly v. State, 3 Smedes & M. (11 Miss.) 518 (1844); King v. State, 5 How. 730 (1841). The jury had a right to return a verdict of manslaughter although the verdict under the facts in the instant case might have sustained a murder conviction. Therefore, the appellant cannot complain of a manslaughter verdict under the circumstances of this case. Boyd v. State, 253 Miss. 98, 175 So.2d 132 (1965). (257 So.2d at 508).
In the case at bar, when the jury found the defendant guilty of murder, it necessarily found that defendant was guilty of homicide which was not justifiable or excusable, thus rejecting the defenses *340 of self defense and accident. If the case is remanded for a new trial on the indictment, the defendant would thereby be permitted to present to a second jury his defenses which were rejected by the first jury. We do not believe it is necessary that the verdict of guilty be affirmed by another jury. We see no sound reason to remand for a new trial and thereby require the defendant to again be convicted of manslaughter before being punished.
Murder conviction reversed, remanded for resentencing for manslaughter.
GILLESPIE, C.J., and PATTERSON, ROBERTSON, WALKER and BROOM, JJ., concur.
RODGERS, Presiding Justice (dissenting):
I cannot agree with my astute colleagues who have rendered the majority opinion in this case because I am of the opinion that it is based upon an erroneous, assumed postulate: Namely that the trial court erroneously sentenced the defendant for murder instead of manslaughter. That is to say the trial court, without the necessity of a new trial, should have sentenced the defendant for manslaughter even though the jury verdict was for murder. This erroneous conclusion is based upon the theory that manslaughter is an integral part of the crime of murder. A voluntary or involuntary killing of a human being without malice can never be an integral part of the intentional killing of a human being with malice aforethought. The two crimes are distinct and separate. It is pointed out in 26 Am.Jur. Homicide § 17 at 165-166 (1940), as follows:
"If a homicide is neither murder in the first nor in the second degree, and yet is neither justifiable nor excusable in law, it follows, ordinarily, that it must be manslaughter. Manslaughter is a distinct offense, not a degree of murder. It is an unlawful killing of a human being, done without malice, express or implied, either in a sudden quarrel or unintentionally while in the commission of an unlawful act. The distinction between murder in the second degree and manslaughter is the element of malice, which is a constituent of the former but entirely wanting in the latter.
According to the common-law classification, manslaughter may be voluntary, as where the homicidal act is done under the influence of passion produced or occasioned by some provocation, which, in tenderness for the frailty of human nature, the law considers sufficient to palliate the offense, or it may be involuntary, as where it results from the commission of certain unlawful acts not accompanied with any intention to take life. The common-law classification and definitions have for the most part not been changed by such statutes as have been enacted on the subject, although in some instances several degrees of manslaughter have been created.
It is not essential to the crime of manslaughter that the homicidal act shall have been done in any particular manner or with any particular weapon, deadly or otherwise. The variety of circumstances under which the crime may be committed is infinite. The fact of death is, of course, the very foundation of the crime at common law, and so tenacious are the courts of the common-law terminology that it has been held incompetent for the legislature to declare a person guilty of manslaughter when life has not been taken." (Emphasis added). (Footnotes omitted).
I know, of course, that the jury can find one charged with murder guilty of manslaughter. Section 99-19-5, Mississippi Code of 1972, is as follows:
"On an indictment for any offense the jury may find the defendant guilty of the offense as charged, or of any attempt to commit the same offense, or may find him guilty of an inferior offense, *341 or other offense, the commission of which is necessarily included in the offense with which he is charged in the indictment, whether the same be a felony or misdemeanor, without any additional count in the indictment for that purpose."
But does that mean that this Court can pass upon the evidence as a jury and find from the evidence that the defendant is guilty of manslaughter? I do not think so. What we have done over the years heretofore was to examine the record and determine whether or not the evidence was sufficient to prove the crime of murder and if we found that the testimony was insufficient to convict the defendant of murder, we reversed the case, and usually advised the trial court that we were of the opinion that the evidence was insufficient to prove murder, but that the jury could find the defendant guilty of manslaughter.
In Lee v. State, 130 Miss. 852, 854, 94 So. 889, 890 (1923), we said:
"[W]e think the manslaughter instruction should have been granted, and that under all the testimony in this case it is one in which the jury should be permitted, under proper instructions, to say whether the killing was the result of malice or heat of passion, or was done in self-defense. Haley v. State, 123 Miss. 87, 85 So. 129, 10 A.L.R. 462."
The case was reversed and remanded for a new trial. We did not find the defendant guilty of manslaughter and did not return the case for sentence or a finding of guilt of manslaughter by this Court.
In Bergman v. State, 160 Miss. 65, 133 So. 208 (1931), where the jury verdict was murder, we said:
"We think, however, that the court below should have limited the jury to convict of manslaughter, and should have eliminated murder from their deliberations, leaving them the theories that appellant was either guilty of manslaughter, or was innocent." (160 Miss. at 70, 133 So. at 210).
We did not find defendant guilty of manslaughter by a majority vote of the members of the Supreme Court. We reversed for a new trial.
In Coleman v. State, 218 Miss. 246, 67 So.2d 304 (1953), we held that the defendant could not be guilty of a crime more than manslaughter. Again we must have considered the issue of manslaughter to be a jury issue because we reversed the judgment and granted a new trial by a jury.
In Jordan v. State, 248 Miss. 703, 705, 160 So.2d 926 (1964), we said: "However, we think the evidence reflects a situation where appellant could not be guilty of an offense greater than manslaughter, and reverse and remand the case for a new trial." We also said:
"On the other hand, the `killing of another in the heat of passion, without malice, by the use of a dangerous weapon, without authority of law, and not in necessary self-defense, shall be manslaughter.' Miss.Code 1942, Sec., § 2226. Ordinarily, whether a homicide is murder or manslaughter is a question for the jury. However, in this case the evidence shows that Rose was the aggressor, and we do not think there was enough evidence to make a jury issue on the questions of premeditation and other elements of murder.
"Whether appellant acted in self-defense and was justified in his actions, or whether he acted not in necessary self-defense, but in the heat of passion without malice, were questions for the jury. Anderson v. State, 199 Miss. 885, 25 So.2d 474 (1946). Accordingly, the court erred in submitting to the jury the question of whether appellant was guilty of murder. Jones v. State, 98 Miss. 899, 54 So. 724 (1910); Travis v. State, 9 So.2d 880 (Miss. 1942); Cutrer v. State, 207 Miss. 806, 43 So.2d 385 (1949). The judgment is reversed, and the cause is *342 remanded for a new trial on the charge of manslaughter." 703 Miss. at 706-707, 160 So.2d at 927. (Emphasis added).
In the case of Harrell v. State, 218 So.2d 883, 886 (Miss. 1969), wherein the facts were close (as in the instant case) we said:
"As we have said, the present case is close upon the facts as to the guilt or innocence of the accused. After carefully reviewing the whole record, we have concluded that while the evidence was sufficient to withstand appellant's motion that the jury be instructed peremptorily to return a verdict of not guilty, the conviction should be reversed and the case remanded for a new trial in order that another jury may pass upon appellant's guilt or innocence of unlawful homicide, and upon the grade of her offense, if found guilty." 218 So.2d at 886-887.
There is no case in the history of this state where this Court has assumed the authority granted the jury in criminal cases to find one guilty of an "inferior offense" so as to convict a defendant of another and different crime from that charged, except where the lesser crime is necessarily included as a constituent part of the crime charged.
I agree that this Court has remanded simple assault and battery cases for sentencing where the defendant was convicted of assault and battery with intent to kill and murder. Washington v. State, 222 Miss. 782, 77 So.2d 260 (1955); Edgar v. State, 202 Miss. 505, 32 So.2d 441 (1947); White v. State, 202 Miss. 246, 30 So.2d 894 (1947); Clark v. State, 198 Miss. 88, 21 So.2d 296 (1945); Griffen v. State, 196 Miss. 528, 18 So.2d 437 (1944); Daniels v. State, 196 Miss. 328, 17 So.2d 793 (1944).
I also agree that this Court has remanded a burglary case to be sentenced for trespass. It will be noted, however, that in each instance the proof required in assault and battery with intent to kill and murder required proof of assault and battery, and before one could be found guilty of the greater crime, proof was introduced to show the lesser crime; namely: trespass in burglary cases, and assault and battery in assault and battery with intent to kill and murder cases.
On the other hand, the prosecution is not required to show homicide without malice, as in manslaughter cases, in order to establish homicide with malice, as in murder cases. These two charges are not compatible.
What we are doing here is actually voting in this Court to find the defendant guilty of manslaughter. This issue is for the jury. Miss. Code Ann. § 99-19-5 (1972). I seriously doubt that the legislature could give this Court this authority to so do, in view of Section 26 of the Mississippi Constitution.
I agree with the contention of this Court that every unlawful homicide is either murder or manslaughter. It is murder when done with premeditated malice, and manslaughter when done without malice, but an unlawful homicide cannot be both. It must be one or the other. Moreover, when we find here that evidence is not sufficient to sustain a jury verdict of murder, it then becomes a jury question as to whether or not the defendant is guilty of manslaughter. Miss. Code Ann. § 99-19-5 (1972). I see no authority in the law for this Court to vote to find the defendant guilty of manslaughter, and I doubt the authority of the trial judge to sentence the defendant on our verdict.
The majority opinion has overlooked the fact that in the very case for which they have elected to follow [Bangren v. State, 196 Miss. 887, 17 So.2d 599 (1944)], the specially concurring opinion held against such new Arkansas theory. Justice McGehee had the following to say:
"I concur in the foregoing views but since they have not received the assent *343 of a majority of the Justices, I was unable to incorporate the same as a part of the controlling opinion written by me herein." 196 Miss. at 901, 17 So.2d at 602.
Moreover, Justice Alexander admitted in his specially concurring opinion:
"It may be that the course here advocated should not be followed in all reversals of convictions of murder, for the only alternative in some cases may be acquittal. But when as here, there was a deliberate homicide not justified as either inadvertent or in the heat of passion, and when the jury have found defendant guilty not only of manslaughter but of murder, it should be affirmed as to that degree implicit in the jury's verdict. 196 Miss. at 900, 17 So.2d at 601.
The majority opinion in this case points out that we have said the indictment for murder includes the charge of manslaughter. Roberson v. State, 257 So.2d 505 (Miss. 1972). However, the majority opinion again fails to point out that this was a jury issue in that case. In Roberson we said: "The jury had a right to return a verdict of manslaughter although the verdict under the facts in the instant case might have sustained a murder conviction." 257 So.2d at 508.
In Goldsby v. State, 226 Miss. 1, 15, 78 So.2d 762, 767 (1955), cited in the majority opinion, we said: "Both guilt and the grade of the homicide were for the determination of the jury."
In the instant case the jury came back at least twice and asked the court for other instructions on the question of manslaughter but the trial judge informed the jury that he could not help them with additional instructions. The jury stayed out all night and finally returned a murder verdict.
We have not overruled the many cases holding that the case should be remanded for a jury trial when the evidence is insufficient to establish murder, we simply ignore them. What are we to do with them?
I would reverse this case for the jury trial on the issue of manslaughter.
INZER and SMITH, JJ., concur.