473 So.2d 943 (1985)
Barbette CLEMONS
v.
STATE of Mississippi.
No. 55585.
Supreme Court of Mississippi.
July 31, 1985.
Mark S. Duncan, Philadelphia, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Pat Flynn, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before WALKER, P.J., and PRATHER and ANDERSON, JJ.
ANDERSON, Justice, for the Court:
This is an appeal of a conviction rendered in the Circuit Court of Neshoba County wherein the appellant, Barbette Clemons, was convicted of murder and sentenced to life imprisonment in the custody of the Mississippi Department of Corrections.
All parties agree that Jeanie Gary and Johnny Triplett went to Eddie B. Hill's cafe on the night of February 4, 1984. They further agree that the defendant Barbette Clemons arrived a short while later and the three engaged in friendly conversation and considerable drinking. This is as far as the agreement goes. Essentially, an argument developed between the defendant and Triplett. They fought twice in the cafe, with the witness Gary intervening to help Triplett. There is conflicting testimony as to who was the aggressor in each of these fights. Triplett had choked the defendant and as Triplett left the cafe, the defendant threatened to "get" him. The defendant left the cafe shortly after Triplett. There was then a third confrontation in the street some distance away involving the same three persons, which resulted in the defendant stabbing Triplett in this third fight. Triplett was taken to the hospital, where he died later that night.
Jeanie Gary, the victim's girlfriend and an aunt of the defendant, testified for the state that the defendant began to bother two elderly men across the room and that she walked over to appellant to tell them to stop, pulling on his coat. He jerked loose from her and the victim, Johnny Triplett, approached defendant and told him to stop. The defendant said he would whip Triplett and attempted to hit him with a pool stick that Gary grabbed away from him. Defendant then knocked her to the floor. The defendant and Triplett began fighting with Triplett striking the first blow. They were separated and defendant attacked Triplett again. Gary then left the cafe to get help as the two struggled on the floor. When she rejoined Triplett on the street, he was carrying a cue stick and the two began walking home. They were soon confronted by Clemons, coming at them from the direction of his home, with a big stick and a butcher knife. She then ran to a nearby *944 house for help and to phone police as the two men approached each other. From the door of the house, she saw the two men fighting with sticks, and then saw Clemons stab Triplett once in the chest. The defendant told the witness, "I killed your man," and said he would get her, too.
On cross examination Gary testified that at the onset of the first fight Triplett approached Clemons and said he should fight someone his own age. She admitted having struck both men with a pool cue as they fought, and that during the first fight, each of the men choked each other. She left during the second fight to summon help. She then rejoined Triplett on the street where she had heard him hollering at Clemons. She admitted she had carried a knife in the past and had cut Triplett on two prior occasions in the past year. However, she denied having a knife on the night in question and denied any participation in this third fight.
The physician in the emergency room testified that Triplett had indicated his major problem was with his legs on arrival at the hospital. However, an examination showed a stab wound in the upper adbomen and a stab wound in the left flank with a superficial cut on the right knee. A second doctor testified that the wound to the abdomen was approximately eight inches deep.
Several independent witnesses testified that they heard the defendant threaten to "get" Triplett. There was also testimony that Triplett did, indeed, choke defendant during the fights. Two witnesses testified that Triplett was the aggressor in the second fight, but only after the defendant had put his hand under his coat as if to go for a weapon.
Howard Fox, who observed the third fight in front of his home, testified for the state. He stated he saw Triplett with a cue stick in his hand and the defendant with a knife. Triplett backed up for approximately twenty feet with the defendant walking toward him. The two men tried to reason with each other, with the defendant putting his knife down on the ground, but as Triplett bent over to put his pool stick down, the defendant said he knew Triplett was "not going to act right," and picked the knife up again. The defendant then went across the street and picked up a stick, lunging at Triplett with it. The two men began fighting with the sticks and when the defendant's stick broke, he stabbed Triplett once with his knife. After Triplett fell, the defendant continued to beat him with the pool stick and to taunt him.
The state rested and the motion for directed verdict was denied.
The defendant testified that he went across the room and as he played pool he joked with an elderly man. Gary approached him and jerked his coat. He pushed her out of the way and at some point, Triplett approached him, grabbed his throat and choked him as Gary beat him with a cue stick. He attempted to leave, but Triplett choked him again, quite severely.[1] He saw Triplett leave and he left shortly afterward. Triplett was outside with a cue stick and he heard Triplett threaten to kill him. Triplett and Gary then chased him until he became tired. He grabbed a stick and stopped to stand his guard. They fought again, and as Triplett again choked him on the ground, he saw Gary behind Triplett with a butcher knife. He did not know if she stabbed him. At this point, he got his knife from his pocket and stabbed Triplett once in the chest.
At issue in this case is whether or not the facts are sufficient to support a conviction of murder. In this case there is such contradictory testimony that it is virtually impossible to reconstruct what actually happened. There are a number of unresolved issues. The Court notes, for example, that the defendant was only seen to have stabbed Triplett once in the stomach and denied stabbing him twice. The second stab wound of Triplett was unaccounted for, and defendant contends that Gary did it.
*945 This Court has difficulty understanding how the jury was able to extrapolate enough competent facts from the many versions of the story to sufficiently support the finding of murder. From the record there is more than enough conflicting evidence to cast at least a reasonable doubt, as to murder.
This Court was faced with similar circumstances in an earlier case.
In Wells v. State, 305 So.2d 333 (Miss. 1974), the defendant killed the deceased during a fight and was found guilty of murder. This Court held that the evidence in the case was not sufficient to support the conviction of murder and should be reversed. Under the circumstances it held that the statute defining the offense of manslaughter was applicable and there reversed and remanded the case for resentencing for manslaughter. Accord: Bradley v. State, 413 So.2d 725 (Miss. 1982).
The Wells concept was totally embraced and followed in the subsequent case of Biles v. State, 338 So.2d 1004, cert. den. 431 U.S. 940, 97 S.Ct. 2655, 53 L.Ed.2d 258 (Miss. 1976). In an analogous situation, the Court held that the state's evidence was sufficient to support a murder conviction, but not a conviction for capital murder, where it failed to prove beyond a reasonable doubt that the defendant murdered the victim while engaged in the crime of kidnapping. That Court stated:
In Jackson v. State, 337 So.2d 1242, rendered October 5, 1976, we held a jury may be instructed in a capital murder case that it may find a defendant guilty of a lesser included offense. Since a jury may be instructed in a capital murder case that it may find a defendant guilty of a lesser included offense when such instruction is justified by the evidence, the following rule which is well established in our jurisprudence is applicable. A jury verdict may be affirmed as to guilt, but the case remanded for resentencing when the proof is not sufficient to sustain a conviction for the crime charged, but is sufficient to sustain a conviction for a lesser included offense. Wells v. State, 305 So.2d 333 (Miss. 1974), and cases cited therein. (338 So.2d at 1005).
The Court then reversed the capital murder conviction and remanded for resentencing for murder. In accord, is our recent pronouncement in Smith v. State, 463 So.2d 1028 (Miss. 1985). We find in the instant case that the facts are not sufficient to support the conviction for murder and that the verdict is against the overwhelming weight of the evidence. In accord with Wells, we find that it would serve no useful purpose to subject the state and the defendant to another trial for manslaughter when the evidence has established guilt of that crime beyond a reasonable doubt.
We therefore reverse the conviction of appellant of murder and remand the case for resentencing for the crime of manslaughter.
REVERSED AND REMANDED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and DAN M. LEE, HAWKINS, PRATHER, ROBERTSON and SULLIVAN, JJ., concur.
NOTES
[1] The defendant entered pictures into evidence of marks on his neck, allegedly caused by the choking. The trial was conducted just nine days after the alleged murder.