BARNES, J.,
for the Court.
¶ 1. Mary Shields was convicted of murder and sentenced to life imprisonment. *1034 She brings this appeal and raises as her only issue that the trial court erred in denying her motion for new trial or, in the alternative, JNOY, on the grounds that her guilty verdict was against the weight and sufficiency of the evidence. She contends that the State established the elements of manslaughter but failed to establish the elements of deliberate design to effect death or any evidence that she “evinced a depraved heart.” Finding no error, we affirm Shields’s conviction and sentence.
FACTS
¶ 2. On New Year’s Eve 2002-03, Mary Shields was celebrating at the Club Elite, a small bar in Columbus, Mississippi. With her were her son, Joseph, and her friend, Mary Moore, also known as “St. Louis.” There were approximately thirty people in the bar. St. Louis was heavily intoxicated and needed assistance from Mary Shields to stand, walk and sit down. Larry Martin, who was also intoxicated and who had a prior relationship with St. Louis, was also in the bar. When Mary Shields tried to help St. Louis into a chair, St. Louis fell, and Mary Shields attempted to help her back into the chair. Martin walked over to Mary Shields and asked her what she was doing with St. Louis. Shields and Martin exchanged words and began pushing each other. The fighting escalated and continued for some time. St. Louis joined in at some point, hitting Martin with an umbrella. Joseph emerged from the bathroom and also joined in the fight.
¶ 3. There was a variety of testimony at trial as to what happened next. According to Brenda Lowery, while Shields and Joseph were hitting Martin, Martin fell to the floor, and Joseph kicked him while Shields swung a chair or barstool. Lowery testified that Martin was not able to defend himself to any degree after Joseph joined the fight. Lowery’s attempts to break up the fight were unsuccessful. She testified that Martin made it to his feet but fell again when struck with a barstool by Mary Shields. At some point, the wooden barstool came apart during the fighting. Shields dropped the barstool and left the bar.
¶ 4. Linda Jones testified that during the last half of the brawl, which lasted fifteen to twenty minutes, Mary Shields was swinging the barstool. Jones testified that the fighting lasted at least six minutes before Joseph joined in. She did not recall how the fight ended.
¶ 5. Larry Martin’s wife, Sharon, testified that after Martin approached Mary Shields and St. Louis, Martin and Shields exchanged words. They then began pushing and hitting each other, although Sharon did not know who first hit whom. Sharon left the bar to look for help and did not see Mary Shields hit Martin with the barstool.
¶ 6. Brenda Lawrence testified that she did not know who “passed the first lick or what.” She stated that attempts were made to break up the fight, but that Mary Shields refused to stop. Lawrence said that Martin was trying to get away from Shields but could not. Lawrence also saw Joseph kicking Martin while Martin was on the floor.
¶ 7. After Shields left, Martin was taken to a hospital where he died. Shields argues that Martin died of a heart attack and that the blunt force trauma from the fight did not in and of itself cause his death. The State contends that the expert testimony showed that the ultimate and immediate cause of death was blunt force trauma and that Martin’s underlying heart disease, while potentially life threatening, was not lethal.
*1035 ¶ 8. Dr. Steven Hayne, the State’s pathologist, gave the following testimony:
Q: Now, Dr. Hayne, when you make your ultimate findings as to the cause of death, what in this particular case was your ultimate finding as to the cause of death of the deceased, Larry Martin?
A: The ultimate cause of death or I call the immediate cause of death was blunt force trauma.
Q: And the second underlying cause of the death, please, sir?
A: The underlying cause was the preexisting cardiovascular disease — hypertensive heart disease and coronary artery disease. The blunt force trauma did not in and of itself directly cause the death. It was indirectly. There were no major tears of body organs or excessive bleeding or the like; however, these types of blunt force trauma when inflicted on an individual who has underlying cardiovascular disease can become lethal.
¶ 9. Dr. Hayne testified that Larry Martin had underlying heart disease, including hypertension due to an enlarged heart and evidence of coronary artery disease or hardening of the arteries. Dr. Hayne stated that “the heart disease was not lethal in and of itself. An individual would not be expected to succumb under normal circumstances with a heart such as he had.” Dr. Hayne also testified that Martin’s condition was not unusual for a man of his age. Dr. Hayne stated that he did not see any evidence of a heart attack.
¶ 10. Mary Shields was indicted for deliberate design murder and tried by a jury in Lowndes County. At the close of the State’s case-in-chief, the defense moved for a directed verdict as to the murder charge and requested that the case move forward on the charge of manslaughter, but the motion was denied. Mary Shields did not testify but presented two witnesses who did not significantly dispute the State’s evidence.
¶ 11. The jury returned a verdict of guilty of murder, and the trial judge sentenced Mary Shields to life in prison. The defense filed a motion for a judgment notwithstanding the verdict or, in the alternative, a new trial. The motions were denied, and this appeal followed.
ISSUE AND ANALYSIS
WHETHER SHIELDS’S GUILTY VERDICT WAS AGAINST THE WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
STANDARD OF REVIEW
¶ 12. When reviewing the denial of a motion for new trial based on an objection to the weight of the evidence, this Court will only reverse a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice. Bush v. State, 895 So.2d 836, 844(¶ 18) (Miss.2005). In analyzing such a claim of error, we are required to view the evidence in the light most favorable to the verdict, and we will grant a new trial “only in exceptional cases in which the evidence preponderates heavily against the verdict.” Id.
¶ 13. In contrast, in considering whether the evidence is legally sufficient to sustain a conviction in the face of a motion for JNOV, “[T]he critical inquiry is whether the evidence shows ‘beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed.’ ” Id. at 843-44(¶ 16) (quoting Carr v. State, 208 So.2d 886, 889 (Miss.1968)). The key question in this analysis is “whether, after viewing the evidence in the light most favorable to the *1036 prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Id. (emphasis added). If the evidence against the defendant is such that “reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions on every element of the offense,” we will deem the evidence sufficient. Id.
DISCUSSION
¶ 14. Mary Shields was convicted under Mississippi Code Annotated § 97-3-19 (Supp.2003), which states that “The killing of a human being without the authority of law by any means or any in manner shall be murder in the following cases: (a) When done with deliberate design to effect the death of the person killed ....” Shields’s contention that the death of Larry Martin was the result of a heart attack and attributable to “heat of passion” is not supported by the evidence. The pathologist’s testimony that Martin’s death was the result of blunt force trauma and that there was no evidence of a heart attack is not disputed by any evidence.
¶ 15. Shields cites Dedeaux v. State, 630 So.2d 30 (Miss.1993), as similar to the present case. Dedeaux also involved a killing at a small Mississippi “juke joint” but under totally dissimilar circumstances. In Dedeaux, an estranged husband and his wife’s new boyfriend got into an argument, and the boyfriend shot and killed the husband in self-defense. Because the evidence showed that Dedeaux shot the husband without malice or premeditation, the court reversed the jury verdict of murder and remanded the case to the trial court for sentencing on the offense of manslaughter. In the present ease there was protracted combat between Shields and Martin. There was testimony that Martin cowered in a defensive posture and yet Shields continued to hit him with sufficient force to break the barstool into pieces. Unlike Dedeaux, there was no evidence that Shields was acting in self-defense in the present case.
¶ 16. Another case cited by Shields is Clemons v. State, 473 So.2d 943 (Miss.1985), which also involved a barroom brawl. In that case, Clemons stabbed Johnny Triplett after they had been involved in several altercations with each other. The court held that “there is such contradictory testimony that it is virtually impossible to 'reconstruct what happened” and the questions concerning the stab wounds that caused Triplett’s death, that there was “more than enough conflicting evidence to cast at least a reasonable doubt, as to murder.” Id. at 944-45. Again, this case is not helpful to the present circumstance. There was no significant dispute that Mary Shields beat Larry Martin with a barstool. There is every indication that Shields had several opportunities to stop but persisted until she broke the barstool.
¶ 17. Both Dedeaux and Clemons cite to Wells v. State, 305 So.2d 333 (Miss.1974). In Wells, none of State’s witnesses saw the altercation between the defendant and the victim and “[t]he killing occurred in a sudden fight at a time when the uncontradicted testimony shows that [the victim] was attacking the defendant.” Id. at 336. In the present case there were many eyewitnesses to the altercation, and there was inconclusive evidence as to who the initial aggressor was. What is clear is that this was an extended altercation, lasting up to twenty minutes, and that the actions of Mary Shields were not sudden or in self-defense. During most of the fight, Shields clearly was the aggressor, and the victim was in a defensive posture, attempting to get away from her. Numerous attempts were made to stop the fighting, but Shields refused.
*1037 ¶ 18. Viewing the evidence in the present case in the light most favorable to the verdict, we cannot find that the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would be an unconscionable injustice. The evidence against Shields, as summarized above, is substantial, and in no way preponderates against the guilty verdict. Likewise, we are unable to find that the evidence against Shields was insufficient to sustain her murder conviction. Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found that Shields acted with deliberate design in the killing of Larry Martin. The evidence showed that Shields repeatedly hit Martin with a barstool, and that her blows were so forceful that they caused the barstool to break. Such conduct directed at a specific individual and likely to produce death may evince a deliberate design to kill. See Jones v. State, 710 So.2d 870, 879(¶35) (Miss.1998). As the evidence supports the jury verdict, we are compelled to affirm.
¶ 19. THE JUDGMENT OF THE CIRCUIT COURT OF LOWNDES COUNTY OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LOWNDES COUNTY.
KING, C.J., BRIDGES AND LEE, P.JJ., IRVING, MYERS, CHANDLER, GRIFFIS AND ISHEE, JJ„ CONCUR.