KING, C.J.,
for the Court.
¶ 1. A jury in the Lincoln County Circuit Court found Michael D. Leggett guilty of depraved-heart murder pursuant to Mississippi Code Annotated section 97-3-19 (Rev.2006). Leggett was sentenced as a habitual offender to life without eligibility for probation or parole. Subsequently, Leggett filed a motion for a judgment notwithstanding the verdict and/or a new trial. The circuit court denied the motion. Leggett has appealed and raises the following issue: whether the verdict of the jury was contrary to the sufficiency and weight of the evidence.
¶ 2. Finding no reversible error, we affirm.
FACTS
¶ 3. In October 2006, Leggett and Jewel Duane Douglas both worked for Ard’s Tree Service. Douglas allowed Leggett to live in his home and provided him with transportation to work. On the morning of October 11, 2006, Leggett and Douglas traveled to Baton Rouge, Louisiana, for work and returned home later that afternoon. Leggett and Douglas drank daiquiris and beer throughout the day.
¶ 4. Once at home, they began repairing a truck. The two engaged in a heated argument over the proper repair procedure. As a result, Leggett drove off in a work vehicle. While Leggett was gone, Douglas called Jason Ard, owner of Ard’s Tree Service, to inform him that Leggett had taken the truck. Leggett returned approximately thirty minutes later, and soon afterwards, Ard arrived. Ard fired Leggett for taking the work truck without permission. Leggett was upset; he punched out a window in the storm door to Douglas’s home and injured his hand. Leggett then began walking to a family member’s house, the Odom residence.
¶ 5. Douglas went after Leggett and offered him a ride. Leggett refused the ride from Douglas, but within ten or fifteen minutes, he accepted a ride from Mississippi State Highway Patrol Trooper Larry Foster. During the ride, Leggett told Trooper Foster that he believed Douglas had stolen his wallet.
¶ 6. Once at the Odom residence, Leg-gett received assistance for his injured hand. Leggett then called Douglas, and the conversation escalated into an argument over the alleged stolen wallet. Mark Culbertson, a friend of the Odom family, arrived at the Odom residence. Leggett asked Culbertson to take him to Douglas’s house. Culbertson agreed, and Leggett armed himself with three kitchen knives, which he tucked into the waistband of his pants. It is undisputed that upon arrival at Douglas’s house, Culbertson remained in the car while Leggett went inside. *319 Once inside, Douglas and Leggett continued to argue. Exactly what happened next was disputed at trial.
¶ 7. Culbertson testified that he saw Leggett pulling Douglas out of the house with one hand while waving a knife in the other. According to Culbertson, Douglas broke away and started running toward his truck, and Leggett yelled, “Get him!” Culbertson admitted that he responded by grabbing a tire iron from the floorboard of his car and throwing it toward Douglas. Culbertson testified that the tire iron hit Douglas in the back causing him to fall, and Leggett then retrieved the tire iron, straddled Douglas, and beat him repeatedly-
¶ 8. Leggett denied any involvement in the beating of Douglas. Leggett claimed that when Douglas exited his home and was walking toward his truck, Culbertson threw the tire iron. According to Leggett, the tire iron struck Douglas in the back of the head, and the single impact to Douglas’s head resulted in his death.
¶ 9. After the altercation, Culbertson and Leggett noticed another vehicle approaching Douglas’s home; they decided to flee and return to the Odom residence. Witnesses inside the Odom residence testified that upon their return, Culbertson and Leggett appeared distraught. The occupants of the other vehicle arrived at Douglas’s home and noticed Douglas’s condition, followed Culbertson and Leggett to the Odom residence, and notified the authorities. The police arrived at the Odom residence and took Culbertson and Leggett into custody.
¶ 10. Douglas was taken to the hospital for medical treatment. As a result of the injuries, Douglas died the next day. Culbertson pled guilty to manslaughter and testified against Leggett at trial; Leggett was convicted of murder.
ANALYSIS
¶ 11. Leggett has appealed the circuit court’s decision to deny the motion for a judgment notwithstanding the verdict and/or a new trial. Leggett requests that this Court reverse his conviction and grant him a new trial or simply render a manslaughter conviction. Leggett suggests that the murder conviction is contrary to the sufficiency and weight of the evidence.

1. Sufficiency of the Evidence

¶ 12. A motion for a judgment notwithstanding the verdict challenges the legal sufficiency of the evidence. Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss.2005). This Court must consider whether the evidence shows “beyond a reasonable doubt that accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction.” Id. (citation omitted).
¶ 13. Leggett was convicted of depraved-heart murder, which is defined as:
(1) The killing of a human being without the authority of law by any means or in any manner shall be murder in the following cases:
(b) When done in the commission of an act eminently dangerous to others and evincing a depraved heart, regardless of human life, although -without any premeditated design to effect the death of any particular individual!.]
Miss.Code Ann. § 97-3-19(l)(b) (Rev. 2006).
¶ 14. Leggett suggests the evidence is insufficient to support a murder conviction because the State failed to introduce evidence of premeditation or deliberate design. It is a well-established principle of law that the lack of premeditated *320 design is not an essential element of the offense of depraved-heart murder. Montana v. State, 822 So.2d 954, 963 (¶ 39) (Miss.2002). “[T]he State is not required to prove lack of premeditated design in order to convict a defendant pursuant to § 97 — 3—19(l)(b).” Id. Therefore, this issue is without merit.

2. Weight of the Evidence

¶ 15. A motion for a new trial challenges the weight of the evidence. Bush, 895 So.2d at 844 (¶ 18) (citation omitted). An appellate court “will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Id. “In determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial.” Miller v. State, 980 So.2d 927, 929 (¶ 10) (Miss.2008) (citation omitted).
¶ 16. Leggett argues the jury verdict is against the overwhelming weight of the evidence, and this Court should reverse and grant a new trial or render a manslaughter conviction. Manslaughter is defined as:
The killing of a human being, without malice, in the heat of passion, but in a cruel or unusual manner, or by the use of a dangerous weapon, without authority of law, and not in necessary self-defense, shall be manslaughter.
Miss.Code Ann. § 97-3-35 (Rev.2006).
¶ 17. Leggett claims contradictory testimony presented at trial cast a reasonable doubt as to murder, and during the fatal altercation, he was acting in the heat of passion.

A. Contradictory Testimony

¶ 18. Leggett relies on Clemons v. State, 473 So.2d 943 (Miss.1985), in support of his request to reverse his murder conviction based on contradictory testimony. In Clemons, the Mississippi Supreme Court held that reversal was appropriate when “there is such contradictory testimony that it is virtually impossible to reconstruct what actually happened” and the conflicting evidence “cast at least a reasonable doubt, as to murder.” Id. at 944-45.
¶ 19. In Clemons, an argument between two men erupted into a fatal stabbing. Numerous witnesses provided conflicting accounts of the fatal event; the witnesses did not agree as to whom the aggressor was or how many times the defendant had stabbed the victim. Id. The situation before us is distinguishable from Clemons because there are only two accounts of the fatal event, and the evidence is not so contradictory that it is virtually impossible to reconstruct what happened.
¶ 20. Leggett’s and Culbertson’s versions of the events that occurred after arriving at Douglas’s house are contradictory. Leggett testified that Culbertson threw the tire iron striking Douglas in the back of the head, which resulted in Douglas’s death. Culbertson testified that he did, in fact, throw the tire iron at Douglas, but it only struck him in the back; and Leggett then retrieved the tire iron and proceeded to strike Douglas in the head.
¶ 21. The State provided evidence to support Culbertson’s account of the events. Dr. Stephen Hayne, an expert in pathology, testified that the autopsy revealed numerous injuries, including: lacerations, contusions, three fractures of the skull, and evidence of brain hemorrhaging resulting from the skull fractures. Dr. Hayne’s testimony supported Culbertson’s testimony that the victim was struck more than once. Therefore, unlike Clemons, the *321 evidence is not so contradictory as to create a reasonable doubt as to the charge of murder.
¶ 22. Thus, the issue becomes a determination of witness credibility. The determination of witness credibility lies within the sole province of the jury. Moore v. State, 969 So.2d 153, 156 (¶ 11) (Miss.Ct.App.2007). A reviewing court should not disturb a jury’s finding on conflicting testimony where there is substantial evidence to support the verdict. See Taylor v. State, 744 So.2d 306, 312 (¶ 17) (Miss.1999). The jury heard the conflicting statements coupled with evidence offered on behalf of each side and resolved the statements in favor of the State. The jury reasonably relied on Culbertson’s version of the events-that Douglas endured a severe beating.

B. Heat of Passion

¶ 23. Leggett argues that he was acting in the heat of passion; therefore, the weight of the evidence supports a manslaughter conviction rather than murder. This Court has defined “heat of passion” as:
A state of violent and uncontrollable rage engendered by a blow or certain other provocation given, which will reduce a homicide from a grade of murder to that of manslaughter. Passion or anger suddenly aroused at the time by some immediate and reasonable provocation, by words or acts of one at the time. The term includes an emotional state of mind characterized by anger, rage, hatred, furious resentment or terror.
Griffin v. State, 13 So.3d 833, 837 (¶ 10) (Miss.Ct.App.2009) (citation omitted).
¶ 24. Mississippi law has consistently held that a “heat-of-passion” defense requires evidence of adequate provocation. See Magee v. State, 752 So.2d 1100, 1104 (¶ 16) (Miss.Ct.App.1999). The supreme court has addressed the necessity of adequate provocation stating:
One of the primary elements of a heat-of-passion crime is “immediate and reasonable provocation, by words or acts of one at the time.” This Court has held that “it is essential that the excited and angry condition of the party committing the act which would entitle him to the milder consideration of the law, should be superinduced by some insult, provocation, or injury, which would naturally and instantly produce, in the minds of ordinarily constituted men, the highest degree of exasperation.” This Court further held that “there must not only be passion and anger to reduce a crime to manslaughter, but there must be such circumstances as would indicate that a normal mind would be roused to the extent that the reason is overthrown and that passion usurps the mind destroying judgment.”
Jones v. State, 39 So.3d 860, 866-67 (¶ 36) (Miss.2010) (internal citations omitted).
¶ 25. Leggett testified that once he arrived at Douglas’s house, their conversation did escalate into an argument. Leg-gett also explained Douglas’s attitude changed during the argument, and Douglas went from “being mad to being nice.” Leggett stated that the arguing had ceased, and Douglas walked outside in order to retrieve Leggett’s wallet from his truck and return it. Leggett testified that he had no part in beating Douglas with the tire iron or throwing it at Douglas. Contrary to Leggett’s assertion, there was no evidence offered which established, or even suggested, that Leggett had reacted and killed Douglas in the heat of passion.
¶ 26. Leggett further relies on Dedeaux v. State, 630 So.2d 30 (Miss.1993) to support his argument in favor of manslaugh *322 ter. In Dedeaux, the supreme court reversed a murder conviction and remanded the case for re-sentencing for manslaughter. The defendant claimed that he had acted in self-defense, and the supreme court found adequate provocation in support of his self-defense claim. Because Leggett testified that he was not provoked and had no part in the murder of Douglas, his reliance on Dedeaux is unfounded. This issue is without merit.
CONCLUSION
¶ 27. Viewed in the light most favorable to the State, the elements of the crime were satisfied, and the evidence does not weigh heavily against the jury’s decision to find Leggett guilty of depraved-heart murder. The State provided evidence of Leg-gett’s participation in an eminently dangerous act, the lack of provocation leading to the altercation, and the injuries Douglas sustained in a continuous beating. The trial court did not abuse its discretion by denying the motion; therefore, the judgment is affirmed.
¶ 28. THE JUDGMENT OF THE LINCOLN COUNTY CIRCUIT COURT OF CONVICTION OF MURDER AND SENTENCE AS A HABITUAL OFFENDER OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITHOUT ELIGIBILITY FOR PROBATION OR PAROLE, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ„ CONCUR.