GRIFFIS, P.J.,
for the Court:
¶ 1. Antonio Griffith was convicted of murder for the death of Willie Newsome. In this appeal, Griffith argues that his conviction for murder, rather than manslaughter, was against the overwhelming weight of the evidence.
FACTS
¶ 2. On August 6, 2010, around 7:00 or 7:30 p.m., Ray Butler went to visit New-some, his brother. Newsome’s nickname was Peewee. Newsome was on his riding lawn mower when Butler arrived. For about the next thirty minutes, Butler and other guests waited for Newsome to finish mowing his grass. They planned to ride horses together. Griffith was one of the guests at Newsome’s home.
¶ 3. Newsome told his guests not to drink the beers left in his cooler because he was going to drink them when he finished mowing the lawn. Despite this warning, Griffith drank one of Newsome’s beers.
¶ 4. The accounts of what happened next differ. Butler testified that Newsome chastised Griffith, but there was no physical altercation between them. Bernard Expose testified that Newsome pushed Griffith out of his face. Frank Rhodes testified that Griffith then walked to the street, and a car picked him up. Butler testified that Griffith did not immediately leave, but only left after the group was about to leave to ride horses.
¶ 5. The rest of the group left to ride horses. Rhodes testified that fifteen to twenty men went on the ride. Rhodes and Butler testified that the group returned about an hour and a half later.
*475 ¶ 6. Vincent Brown, a blacksmith/farrier, shod a horse that evening as soon as he arrived. Brown then took a thirty-minute ride with two other men. The record is not clear if this was the same ride that the larger group of guests went on. Brown returned when Newsome returned.
¶ 7. When the group returned, Griffith appeared suddenly and shot Newsome twice. Expose testified that he arrived a few minutes before Griffith and that Griffith spoke to him. Randy Adams, Rhodes, and Expose testified that Griffith did not say anything to Newsome. Butler, Adams, and Quinton Rhodes drove New-some to the hospital, where he was pronounced dead.
¶ 8. Sheriffs deputies found Griffith behind a horse stall at his aunt’s house, which was nearby. They arrested him. Griffith was charged with murder under Mississippi Code Annotated section 97-3-19 (Rev.2006). Dr. Feng Li performed an autopsy on Newsome. Dr. Li reported that Newsome had died of four gunshot wounds, and the manner of death was a homicide.
¶ 9. At the trial, Griffith’s aunt, Brenda Hathorn, testified that she saw Griffith hiding in her horse stall and that “he was in a rampage or something.” She testified that “he was drunk and angry.”
¶ 10. Additionally, Griffith’s mother, Linda Griffith, testified at trial. Linda had gone by Newsome’s house before the shooting. She saw that Griffith’s shirt had grass stains and dirt on it and that something was wrong with him. Linda testified that Butler told her that her son and New-some had been in a little fight. Linda stayed for about thirty or forty minutes.
¶ 11. Griffith himself testified and admitted to killing Newsome. Griffith testified that Newsome pushed him and they fought. Then, Newsome grabbed Griffith by the throat, choked him, and threatened to kill him. Griffith pushed Newsome away. Griffith testified that he had argued before with Newsome, and Newsome had blown those arguments out of proportion.
¶ 12. Griffith testified that his emotions were high after his fight with Newsome. He testified that he thought for about five minutes about everything Newsome had said, and then he left to go get a gun. Griffith testified he was angry after the fight. Griffith testified that about twenty minutes had passed from the time of the fight until he shot Newsome.
¶ 13. After a trial on July 26 and 27, 2011, a jury found Griffith guilty of murder. The circuit court had instructed the jury on the lesser crime of manslaughter. Griffith filed a motion for a judgment not withstanding the verdict or, in the alternative, a new trial. On February 24, 2012, the circuit court denied Griffith’s motion. He was sentenced to life imprisonment in the custody of the Mississippi Department of Corrections. He now appeals his murder conviction.
ANALYSIS
¶ 14. Griffith argues that his conviction for murder, rather than manslaughter, is against the overwhelming weight of the evidence.
¶ 15. We review a trial court’s denial of a motion for a new trial for abuse of discretion. King v. State, 83 So.3d 376, 379 (¶ 11) (Miss.2012) (citation omitted). We weigh the evidence “in the light most favorable to the verdict.” Bush v. State, 895 So.2d 836, 844 (¶ 18) (Miss.2005) (citation omitted). ‘When the claim is that the verdict is against the weight of the evidence, the charge to this Court is to enter into the province of the jury as a thirteenth juror and determine whether the weight of the evidence tips the scales of *476 justice in favor of the verdict.” Johnson v. State, 52 So.3d 384, 397 (¶ 38) (Miss.Ct.App.2009).
¶ 16. At Griffith’s trial, the accounts from Griffith, Expose, and several other witnesses differed from each other. Our supreme court has held that reversal is appropriate where “there is such contradictory testimony that it is virtually impossible to reconstruct what actually happened,” and the conflicting evidence “cast[s] at least a reasonable doubt, as to murder.” Clemons v. State, 473 So.2d 943, 944-45 (Miss.1985). Here, the disputable testimony is not so contradictory as to create a reasonable doubt as to the charge of murder, so the issue is one of witness credibility.
¶ 17. “The determination of witness credibility lies within the sole province of the jury.” Leggett v. State, 54 So.3d 317, 321 (¶ 22) (Miss Ct.App.2011) (citation omitted). We do “not disturb a jury’s finding on conflicting testimony where there is substantial evidence to support the verdict.” Id. The jury heard the conflicting testimony about the degree of severity of the altercation and the length of time Griffith and Newsome were apart before the shooting. The jury resolved the testimony in favor of the State.
¶ 18. The circuit court instructed the jury on the elements of murder and the elements of manslaughter. Manslaughter is “[t]he killing of a human being, without malice, in the heat of passion, but in a cruel or unusual manner, or by the use of a dangerous weapon, without authority of law, and not in necessary self-defense.” Miss.Code Ann. § 97-3-35 (Rev.2006). “An unjustified and unexcused taking of life is presumed to be murder unless there is evidence upon which a jury can rationally justify mitigation down to manslaughter.” Neal v. State, 805 So.2d 520, 525 (¶ 16) (Miss.2002). A killing in the heat of passion may justify such a mitigation to manslaughter. Id.
¶ 19. Heat of passion is:
A state of violent and uncontrollable rage engendered by a blow or certain other provocation given, which will reduce a homicide from a grade of murder to that of manslaughter. Passion or anger suddenly aroused at the time by some immediate and reasonable provocation, by words or acts of one at the time. The term includes an emotional state of mind characterized by anger, rage, hatred, furious resentment!,] or terror.
Griffin v. State, 13 So.3d 833, 837 (¶ 10) (Miss.Ct.App.2009).
¶ 20. Heat of passion requires evidence of adequate provocation. Leggett, 54 So.3d at 321 (¶ 24). The supreme court has held:
[I]t is essential that the excited and angry condition of the party committing the act which would entitle him to the milder consideration of the law, should be superinduced by some insult, provocation, or injury, which would naturally and instantly produce, in the minds of ordinarily constituted men, the highest degree of exasperation.
Jones v. State, 39 So.3d 860, 866-67 (¶ 36) (Miss.2010) (citation omitted).
¶ 21. The absence of malice is the vital distinction between heat-of-passion manslaughter and murder. Miss. Code Ann. §§ 97-3-19(l)(a), 97-3-35. Malice aforethought is defined as the equivalent of “deliberate design.”
[Deliberate always indicates full awareness of what one is doing, and generally implies careful and unhurried consideration of the consequences. “Design” means to calculate, plan, [or] contemplate .... [Deliberate design to kill a *477 person may be formed very quickly, and perhaps only moments before the act of consummating the intent....
Windham v. State, 520 So.2d 128, 126 (Miss.1988).
¶ 22. The corroborated testimony did not establish any evidence of adequate provocation to support Griffith’s claim that he killed Newsome in the heat of passion. Expose and Griffith were the only witnesses out of several eyewitnesses to testify that any physical altercation occurred. Expose testified that Griffith got up towards Newsome, and Newsome just pushed Griffith back. Several other witnesses, however, testified that Newsome and Griffith only exchanged words. From the testimony of all witnesses to the altercation, except Griffith himself, Griffith was in no immediate danger when he left New-some’s house. As embarrassing as New-some’s confrontation about the beer might have been, it was not justification for a homicide.
¶23. Griffith had the deliberate design to kill Newsome; he was aware of what he was doing and quickly planned it. See Windham, 520 So.2d at 127. Griffith testified that he intended to kill Newsome. Griffith’s testimony that Newsome choked him was not corroborated by any eyewitness. After the altercation, Griffith thought for a few minutes and planned to leave to go get his gun. He carried through with his plan. A car picked him up and brought him to his house to retrieve his gun. He returned with his gun, waited, talked to Expose, and shot New-some.
¶ 24. Griffith did not exhibit a “state of violent and uncontrollable rage.” See Griffin, 13 So.3d at 837 (¶ 10). Immediately before the shooting, Expose arrived after Griffith but before Newsome had arrived. Expose and Griffith had a conversation after Griffith had called out to him, “hey Unc.” Expose did not testify to anything being wrong with Griffith during their conversation. Expose also did not testify that Griffith acted angry or upset just before Griffith shot Newsome. Expose testified that their conversation ended because Newsome arrived and, almost immediately, Griffith shot him. Hathorn’s testimony about Griffith being “drunk and angry” was after he had shot Newsome. When she saw Griffith, he had fled to her horse stall and was afraid of going to jail.
¶ 25. Between the altercation and the shooting, a time period of twenty minutes up to an hour and a half had passed according to the conflicting trial testimony. Even assuming for the sake of argument that Newsome’s disapproval was enough provocation, it would not have “instantly producefd], in the minds of ordinarily constituted men, the highest degree of exasperation.” Jones, 39 So.3d at 866-67 (¶ 36).
¶ 26. The jury at Griffith’s trial was instructed on murder and heat-of-passion manslaughter. It chose to convict on the murder charge. After reviewing all the evidence in the light most favorable to the verdict, we find that reversal is not warranted. The weight of the evidence supports the verdict. The circuit court did not abuse its discretion when it denied Griffith’s post-trial motion.
¶ 27. The verdict was not against the overwhelming weight of the evidence. Viewing the evidence in a light most favorable to the verdict, upholding the verdict would not be an unconscionable injustice. Therefore, this issue has no merit.
¶ 28. THE JUDGMENT OF THE JEFFERSON DAVIS COUNTY CIRCUIT COURT OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSIS *478 SIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO JEFFERSON DAVIS COUNTY.
LEE, C.J., IRVING, P.J., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.